[Civ. No. 67992. Second Dist., Div. Six. Dec. 16, 1983.]

COUNTY OF VENTURA et al., Plaintiffs and Respondents, v. MARSHA KAY GEORGE, Defendant and Appellant.

## COUNSEL

MacCabe & George and George F. Vogt, Jr., for Defendant and Appellant.

Michael D. Bradbury, District Attorney, and O. Guy Frick, Deputy District Attorney, for Plaintiffs and Respondents.

## OPINION

**STONE, P. J.**—Appellant, Marsha Kay George, appeals from a judgment of the Ventura County Superior Court ordering her to pay the sum of $2,143.38 to respondent, County of Ventura, as reimbursement for welfare funds expended for the support of the appellant's son, Derek Bowen. We affirm the decision of the trial court.

### FACTS

Appellant obtained a decree of nullity of marriage from the Los Angeles Superior Court in 1974. As part of the final judgment Don Bowen, the father of the appellant's son, was ordered to pay $50 per month for the support of his son Derek. Legal custody of Derek was awarded to appellant.

Appellant was receiving aid to families with dependent children (AFDC), prior to February 1, 1980. From February 1, 1980, to January 31, 1981, Derek resided principally with his father. During this time the appellant continued to receive the AFDC support which she retained.

On May 19, 1980, the respondent, County, filed a complaint seeking to recoup the funds obtained by the appellant during the time Derek resided

outside appellant's home. Respondent's action was filed pursuant to Welfare and Institutions Code sections 11350 and 11350.1. No factual issues were contested. The trial court ruled in favor of respondent and ordered appellant to reimburse the County $2,143.38.

## ANALYSIS

The central issue involved in this case concerns the responsibility of parents to provide support for their children. The secondary issue to be considered is the definition of the term "noncustodial parent."

The appellant asserts that she is not obligated to reimburse Ventura County because she was Derek's "custodial parent" during the time he resided with his father. Welfare and Institutions Code section 11350 specifies that only "noncustodial parents" are required to repay a public agency which has provided AFDC for the support of a dependent child. That section states in pertinent part: "In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the *noncustodial* parent or parents shall be obligated to the county . . . ." (Italics added.)

Appellant points out that the decree of nullity of marriage, granted in 1974 awarded her custody of Derek. Appellant asserts that the award of custody contained in the nullity decree is dispositive of her status as custodial parent for all purposes and in all contexts.

Before addressing the appellant's use of the term "custodial parent" it is valuable to examine the obligations imposed upon parents to provide support for their children.

The obligation of parents to financially provide for their children is considered so important that failure to do so may be punished as a misdemeanor. (Pen. Code, § 270.) The California legislature has consistently articulated its belief that parents must support their progeny. Civil Code section 196 states: "The father and mother of a child have an equal responsibility to support and educate their child in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents." Additional authority can be found for this proposition in Civil Code sections 206, 242, and 4700.

With this background in mind we now turn to the appellant's argument. Ms. George contends that she is not obligated to reimburse the County because she was named as the custodial parent in the final judgment of nullity of marriage. The appellant argues that her designation as custodial

parent provides a shield to a cause of action brought pursuant to Welfare and Institutions Code section 11350 because that code section authorizes recovery only from noncustodial parents.

The question of whether or not a final judgment, issued pursuant to the Family Law Act, can be used to avoid one's obligation to provide financial support to a dependent child was considered in *State of Florida* ex rel. *Dept. of Health & Rehabilitative Services* v. *Vernon* (1982) 138 Cal.App.3d 827 [188 Cal.Rptr. 322] and *Carr* v. *Marshman* (1983) 147 Cal.App.3d 1117 [195 Cal.Rptr. 603].

In *State of Florida* v. *Vernon, supra,* 138 Cal.App.3d 827, Marlene Vernon and Joel Downey obtained a decree of dissolution in 1971 from the state of California. Joel, the father, was awarded custody and ordered to provide for the support of the two minor children. He then abandoned his children by depositing them with his mother (the children's grandmother), a Florida resident. The grandmother was financially incapable of providing support for her grandchildren and consequently applied for an obtained AFDC from the state of Florida.

Florida sought to recoup the funds provided for the benefit of the minors and brought suit against Marlene, their mother. Marlene raised as her defense the fact that the final judgment of dissolution only required that Joel provide support for the children. The court rejected this theory and stated: "We are not without understanding, and sympathy, for the mother who under the circumstances of this case finds herself obliged to support children when a court had directed the father alone to do so. But we opine that the public policy clearly expressed by Civil Code section 196, that insofar as the rights of children are concerned, both father and mother have the responsibility for support, transcends such considerations." (*Florida* v. *Vernon, supra,* 138 Cal.App.3d 827, 831.)

The *State of Florida* v. *Vernon, supra,* 138 Cal.App.3d at page 832 rationale was applied recently in *Carr* v. *Marshman, supra,* 147 Cal.App.3d 1117. In that case Nancy Marshman and John Carr obtained a dissolution of marriage in Sonoma County in 1976. Nancy was awarded custody of the two children. In the summer of 1976 Nancy sent the children to visit John who was residing in Michigan. John did not return the children and Nancy took no steps to enforce the California judgment. John applied for and received AFDC from the Michigan Department of Social Services.

As a condition for receiving the welfare benefits John assigned his right to receive any court ordered support payments to Michigan. Michigan in turn brought suit against Nancy to recoup the support expended on behalf

of her children. As a defense to this action Nancy asserted that the only duty of support was John's under the decree of dissolution. The Court of Appeal rejected this argument and stated: ". . . a decree of dissolution which requires one parent alone to support the children does not abrogate the duty of the other parent to support those children." (*Carr* v. *Marshman, supra,* 147 Cal.App.3d 1117, 1121.)

*Florida* v. *Vernon, supra,* 138 Cal.App.3d 832 and *Carr* v. *Marshman, supra,* 147 Cal.App.3d 1117, are directly analogous to the case at bar. In those cases, as in the present litigation, a parent sought to avoid his or her responsibility to provide support by hiding behind the provisions of a decree terminating the marriage. The *Vernon* and *Carr* courts chose to look beyond the form of the language contained in the decree of dissolution and instead focused on the actual relationship of financial support which existed between parent and child. We believe that the *Vernon* and *Carr* rationale should control in this case.

Appellant contends that respondent County is precluded from bringing an action to obtain reimbursement because of Welfare and Institutions Code sections 11350 and 11350.1 and the holding of *County of Los Angeles* v. *Ferguson* (1979) 94 Cal.App.3d 549 [156 Cal.Rptr. 565]. As previously discussed, section 11350 of the Welfare and Institutions Code only authorizes recovery of welfare funds from the "noncustodial parent." The appellant focuses on the designation noncustodial parent and then cites Welfare and Institutions Code section 11350.1. Welfare and Institutions Code section 11350.1 states in pertinent part: "Nothing herein contained shall be construed to prevent the parties from bringing an independent action under the Family Law Act or otherwise, and litigating the issue of support. In such event, the court in such proceedings shall make an independent determination on the issue of support which shall supersede the order made pursuant to this section."

The language of section 11350.1, quoted above, was interpreted in the *Ferguson* case to mean that all orders made pursuant to the Family Law Act are superior to and supersede any action based upon the Welfare and Institutions Code. The court in *Ferguson* stated: "Where there is a Family Law Act court order, section 11350.1 also clearly recognizes that it is determinative. . . . [¶] Plaintiff's argument that the last sentence of section 11350.1 only renders the Family Law Act order paramount when it is later in date than the order pursuant to said section is specious. Contrary to plaintiff's argument that the word 'supersede' necessarily implies that the superseding order be later in date, it merely means that the superseding order is controlling. Webster's Dictionary (2d ed. 1935, unabridged), page 2533, defines 'supersede' to mean 'to sit above, be superior to,' '[t]o make void or

useless, esp[ecially] by superior power; to make unnecessary or superfluous; . . .' Sections 11350 and 11350.1 thus clearly provide that if there is a Family Law Act order, an independent order under those sections is superfluous." (*County of Los Angeles* v. *Ferguson, supra,* 94 Cal.App.3d 549, 559.)

The *Ferguson* case demonstrates that a Family Law Act order may not be contravened by an action brought pursuant to the Welfare and Institutions Code. In *Ferguson* the County of Los Angeles brought an action against a father pursuant to Welfare and Institutions Code section 11350.1 seeking ongoing child support. The father contended that the action should be dismissed because a Family Law Act order had already been issued from the Orange County Superior Court concerning child support. The Court of Appeal ruled that Mr. Ferguson could not be held liable under the Welfare and Institutions Code section 11350.1 cause of action due to the existence of the Family Law Act order.

While we do not disagree with the analysis in *Ferguson,* that case is distinguishable from the instant situation for two reasons: First, in *Ferguson,* Los Angeles County brought an action for ongoing support, whereas in the case presently under consideration the respondent has merely brought an action for reimbursement of already distributed welfare funds. Secondly, the *Ferguson* case did not attempt to define the term "noncustodial parent" as used in the Welfare and Institutions Code.

To determine whether or not the Welfare and Institutions Code sections 11350 and 11350.1 causes of action are in conflict with the award of custody contained in the appellant's decree of nullity we must examine the meaning of the term "noncustodial parent." Ironically neither the Family Law Act nor the Welfare and Institutions Code specifically defines either custodial or noncustodial parent. Nevertheless, sufficient statutory direction does exist which can provide guidance in formulating a precise understanding of these terms.

Civil Code section 5151, subdivision (8) defines "physical custody" as "actual possession and control of the child." This definition comprises part of the Uniform Child Custody Jurisdiction Act (UCCJA), which is contained within the Family Law Act. (The Family Law Act covers Civ. Code, § 4000 through § 5174.) The legislature placed this definition in the Family Law Act because it recognized the possibility of one having custody of a child without actually obtaining a court order to that effect. The acknowledgement by the legislature that a court decree is not the exclusive manner for acquiring custody demonstrates that a person may become a custodial parent in more than one fashion. Additionally, as is demonstrated by Wel-

fare and Institutions Code section 11457, in some circumstances one must retain physical possession of a child if a parent is to maintain his or her status as a custodial parent.

The issue of physical possession of a child for purposes of determining one's status as a custodial parent is considered in Welfare and Institutions Code section 11457. Section 11457 deals with the collection of funds which have been expended for the support of dependent children, from their non-custodial parents. That section states in pertinent part: "Money from non-custodial parents for child . . . support with respect to whom an assignment under Section 11477 has been made shall be paid directly to the district attorney or his designee and shall not be paid directly to the family. Such absent parent support payments, when collected by or paid through any public officer or agency, shall be transmitted to the county department providing aid under this chapter." This code section uses the phrase "absent parent" in making reference to the noncustodial parent.

The language contained in section 11457 indicates that an absent parent is a noncustodial parent. The word absent connotes physical separateness and is defined in Black's Law Dictionary, Henry Campbell Black, M.A., Fifth Edition, West Publishing Company, 1979, page 8, as meaning, "Being away from; at a distance from; not in company with." Section 11457 does not discuss or acknowledge the possibility of a noncustodial parent being present or in possession of a child who is entitled to welfare support. Therefore, in the context of this section of the Welfare and Institutions Code a person's status as a custodial parent is directly related to one's actual possession and physical control of the dependent child.

Although appellant was awarded custody in the 1974 decree of nullity she has stipulated that her son resided principally with his father from February 1, 1980, to January 31, 1981. Given that appellant did not have possession of Derek during this time period she must be considered to be absent and therefore a noncustodial parent as described in Welfare and Institutions Code section 11457 and mentioned in 11350.

We are not suggesting that appellant's relinquishment of control and possession of her son in any way amended or changed the decree of nullity which was granted pursuant to the Family Law Act. Instead, we simply acknowledge that the concept of custodial parenthood must be interpreted differently depending upon the context within which it is considered. Our recognition of this fact creates no conflict between the Family Law Act and the Welfare and Institutions Code.

■ The decision of the lower court is affirmed for two reasons: First, as demonstrated in the *Vernon* and *Carr* cases, a parent's obligation to

provide financial support for his or her children transcends certain technical interpretations of custody and support orders. Secondly, the appellant was the "noncustodial parent" for purposes of Welfare and Institutions Code section 11350.

Abbe, J., and Gilbert, J., concurred.