[No. C004805. Third Dist. Mar. 6, 1989.]

COUNTY OF YOLO, Plaintiff and Respondent, v.
RICHARD ERIC WORRELL, Defendant and Appellant.

---

**COUNSEL**

L. Jeannette Clark and Whitaker & Bernheim for Defendant and Appellant.

David C. Henderson, District Attorney, and William C. Schemel, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

**MARLER, J.**—Defendant Richard Worrell (father) appeals from the trial court's order that he pay $126 per month as temporary support of his minor child Jasmine Aisha Worrell. He initially challenges the county's decision to file an independent action rather than intervene in an extant domestic relations action. He also asserts his right to an offset for money he spends on the child's support during the two weeks each month that she spends with him. Finally, he claims the trial court erred by failing to consider the mother's ability to work. We shall conclude that the county properly filed this action and that the record demonstrates no error in the amount of support the court ordered father to pay.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this appeal are not disputed. Defendant and Angelika E. Worrell (mother) are the parents of Jasmine, born April 20, 1978. The parents have apparently divorced. In the couple's marriage dissolution action, the family law court apparently reserved the issue of child support. The parents have a de facto joint custody arrangement under which the child spends equivalent time with each parent, with periods of alternating actual physical custody of less than one month, custody usually alternating every other week. No court order designated either parent as the child's primary caretaker for determining public assistance eligibility.

On October 30, 1987, Yolo County (County) sued father for child support and reimbursement of welfare funds. Mother had returned to school and essentially had no income except aid to families with dependent children (AFDC). The County submitted mother's declaration of expenses and a minimum child support worksheet. That worksheet described father as the "noncustodial" parent and determined that he should pay $126.13 per month as his share of the minimum child support award.[1]

Father answered and raised several affirmative defenses. He claimed that the County should have intervened in the couple's pending marriage dissolution action rather than file the action at bar, and that he had not separated from the child, still retained custody through the sharing of custody agreement, and was thus not a "noncustodial parent."

In his brief opposing a temporary child support order, father amplified the contentions of his answer. He added claims for a setoff for the amount

---

[1] The worksheet submitted by the district attorney described the minimum child support award as "the minimum to be paid by the noncustodial parent to the custodial parent for child support."

he expends to support the child during her stays with him, and sought to have the court consider mother's ability "to engage in gainful employment . . . and the fact that [she] voluntarily quit work to return to school."

On May 31, 1988, the trial court entered its "Findings and Order After Hearing for Temporary Support." The court took judicial notice of the couple's domestic relations case and several prior AFDC reimbursement actions filed against both parents individually.[2] The court concluded that the pending domestic relations case did not deprive it of jurisdiction to hear the County's independent AFDC reimbursement action. The court next ruled that a parent having joint legal and physical custody of a minor child was still under the scope of Welfare and Institutions Code section 11350.[3] Finally, the court ruled that Civil Code section 4727 prohibited credit to father for the support he furnished the child during her stays with him.[4] The trial court did not mention father's request in his brief to consider mother's ability to work, a matter not raised by the pleadings.

The court ordered defendant to pay a temporary monthly child support of $126.[5] ██ From this temporary child support order father timely appeals.[6]

## DISCUSSION

On appeal, father makes four principal challenges. First, he claims that the County had no right to institute an independent proceeding; rather, it should have intervened in the pending marriage dissolution action. Second, he claims that he is not an "absent" or "noncustodial" parent within the meaning of Welfare and Institutions Code section 11350. Third, he seeks an offset for funds spent on his daughter's care during the period she resides

---

[2] Neither party has informed us about the substance or status of these prior proceedings.

[3] Welfare and Institutions Code section 11350 authorizes the County to seek reimbursement of AFDC benefits. It applies "[i]n any case of separation or desertion of a parent or parents from a child or children which results in [AFDC] being granted to such family, . . ." (Welf. & Inst. Code, § 11350.) The section then details the repayment obligations of "the noncustodial parent or parents . . . ." (*Ibid.*)

[4] Civil Code section 4727 states: "*Except when a child or children are receiving an AFDC grant,* upon request, the court may take into consideration expenses incurred and savings resulting from shared physical custody arrangements in determining the pro rata share of the mandatory minimum child support award to be allocated to each parent. For the purpose of this chapter, 'shared physical custody' means an arrangement in which the parents share physical custody so that both have custody of the child or children more than 30 percent of a 365-days period." (Italics added.)

[5] The County requested this amount under its computation of the Agnos Act minimum child support award. (Civ. Code, § 4700 et seq.)

[6] An award of temporary child support is an appealable order. (See, e.g., *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368-370 [134 Cal.Rptr. 197, 556 P.2d 297] [temporary spousal support].)

with him. Fourth, he claims that the trial court failed to consider wife's earning capacity. We consider each argument in turn.

We note initially that the trial court's order only required father to pay *temporary* child support. Nothing in that order contemplated the County's recoupment of AFDC funds previously paid to mother. Accordingly, we solely address here the propriety of the trial court's temporary child support award.

■ Father's initial argument challenges the County's authority to proceed via an independent action under Welfare and Institutions Code sections 11350 and 11350.1.[7] (Further undesignated statutory references are to the Welfare and Institutions Code.) Father's argument, however, completely ignores our earlier decission in *County of El Dorado* v. *Spence* (1986) 182 Cal.App.3d 698 [227 Cal.Rptr. 365]. In *County of El Dorado,* we concluded that the pendency of a family law action did not deprive a county of standing to pursue a support order in an independent action. (*Id.,* at pp. 705-708; see also *County of Ventura* v. *George* (1983) 149 Cal.App.3d 1012, 1016-1017 [197 Cal.Rptr. 245].) Father simply ignores our unequivocal holding in *County of El Dorado*. His argument has no merit.

■ Father next argues that he is not an "absent" or "noncustodial" parent within the meaning of section 11350. From this argument, father also concludes that the County should have proceeded under some other statute to order child support. In essence, he claims that no cause of action exists under section 11350 against "custodial" parents. Father claims that he is not a "noncustodial" parent because no court has issued a custody award and he spends approximately every other week caring for his child in his home. Thus, he has full legal custody and at least partial physical custody. We recognize that section 11350 does not immediately address the contemporary penchant for shared legal custody and alternating physical custody. Nevertheless, we believe that both "separation . . . of a parent or parents" and "noncustodial parent or parents," as used within section 11350, have practical applications adaptable to contemporary realities. Indeed, in *County of Ventura, supra,* the Second District reached similar conclusions.

---

[7] Section 11350.1 states in part: "Notwithstanding any other statute, in any action brought by the District Atrorney for child support of a minor child or children, the action may be prosecuted in the name of the county on behalf of the child, children or caretaker parent. The mother shall not be a necessary party in the action but may be subpoenaed as a witness. In an action under this section, there shall be no joinder of actions, or coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support. A final determination of parentage may be made in any such action as an incident to obtaining an order for support. An action for support or paternity pursuant to this section shall not be delayed or stayed because of the pendency of any other action between the parties.

In that case, the mother was named custodial parent in the trial court's final judgment of nullity of marriage. (*County of Ventura, supra,* 149 Cal.App.3d at p. 1013.) Despite that award, the child resided principally with his father for about a year. During that period, however, the mother continued to receive AFDC for which she had established eligibility prior to the child's stay with his father.

The county sought reimbursement of the AFDC benefits paid to the mother. In defense, the mother claimed that she was the "custodial" parent within the meaning of section 11350. (149 Cal.App.3d at pp. 1014-1015.) The trial court rejected the mother's arguments, and she appealed.

The Second District Court of Appeal affirmed. In a long passage, it discussed the meaning of "noncustodial parent." Citing section 11457, the court noted the Legislature's equation of "absent parent" with "noncustodial parent."[8] (149 Cal.App.3d at p. 1018.) The court elaborated, "The language contained in section 11457 indicates that an absent parent is a noncustodial parent. The word absent connotes physical separateness and is defined in Black's Law Dictionary . . . as meaning 'Being away from; at a distance from; not in company with.' Section 11457 does not discuss or acknowledge the possibility of a noncustodial parent being present or in possession of a child who is entitled to welfare support. Therefore, in the context of this section of the Welfare and Institutions Code, a person's status as a custodial parent is directly related to one's actual possession and physical control of the dependent child." (*County of Ventura, supra,* 149 Cal.App.3d at p. 1018.)

In *County of Ventura,* the court thus adopted a practical, nontechnical interpretation of "noncustodial" within the meaning of section 11350. As father here notes, however, *County of Ventura* does not itself resolve the matter. There, the absent parent was gone essentially an entire year. Here, however, the periods of absence alternate with periods of actual physical possession and control. It would appear that each month, *both* father and mother are each alternately "custodial" and "noncustodial" parents.

On its face section 11350 does not address the status of parents who are alternately custodial or noncustodial. For guidance, we turn to another portion of the AFDC scheme, section 11250. In 1985 the Legislature entirely rewrote subdivision (c). That section now states in part: "Aid, services, or

---

[8] Section 11457 states in part: "Money from *noncustodial parents* for child or spousal support with respect to whom an assignment under section 11477 has been made shall be paid directly to the district attorney or his designee and shall not be paid directly to the family. Such *absent* parent support payments, when collected by or paid through any public officer or agency, shall be transmitted to the county department providing aid under this chapter." (Italics added.)

both shall be granted under the provisions of this chapter, . . . to families with related children under the age of 18 years, . . . in need thereof because they have been deprived of parental support or care due to: . . . [¶] . . . (c) *Continued absence of a parent from the home due to divorce,* separation, desertion, or any other reason, except absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States. *'Continued absence'* exists when the nature of the absence is such as either to interrupt or to terminate the parent's functioning as a provider of maintenance, physical care, or guidance for the child, and the known or indefinite duration of the absence precludes counting on the parent's performance of the function of planning for the present support or care of the child. *If these conditions exist, the parent may be absent for any reason,* and may have left only recently or some time previously." (Italics added.)

Section 11250, the general authorization for the California AFDC program, thus comes close to contemplating expressly the situation presented in the case before us. Under section 11250, subdivision (c), only a "continued absence" qualifies a parent for AFDC. But such continued absences may arise *whenever* the absent parent interrupts or terminates his or her functioning as a provider of maintenance, physical care, or guidance for the child. Here, father admittedly interrupts his physical care of his child every other week. In addition, since it is known that father will be absent half of the time, it seems difficult to count "on [his] performance of the function of planning for the present support or care of the child." At best, father's absence precludes counting on his support every other week.[9]

Since the focus of the statute authorizing AFDC *benefits* is "continued absence," we conclude that the statute authorizing *recoupment* of benefits makes the "noncustodial" parent the parent whose absence triggers the eligibility for AFDC. Accordingly, on the record before us, we hold that father is a "noncustodial" parent within the meaning of section 11350.

 Having concluded that father is within section 11350's scope, we again examine his entitlement to an offset under section 11350, subdivision

---

[9] We are not called to determine whether father or mother is the parent more appropriately entitled to receive AFDC under the circumstances of this case. (Compare Civ. Code, § 4600.5, subd. (h) [authorizing court to designate one parent as primary caretaker for purposes of determining eligiblity for public assistance].) We simply *note that section 11250 does not itself use "custodial" or "noncustodial" in determining eligibility for benefits.* Rather, the focus is on substantial physical separations that preclude counting on the absent parent's continued support or care of the child.

We also note that the regulations interpreting section 11250, subdivision (c) state: " 'continued absence' shall be considered to exist when the child lives with each parent for alternating periods of time." (Dept. of Social Services, Manual of Policies and Procedures, Eligibility and Assistance Standards, § 41-450.11 (eff. Jan. 1, 1987).)

(c). We conclude that Civil Code section 4727 precludes such an offset in cases of joint custody.[10]

In *State of Washington* v. *Cobb* (1987) 194 Cal.App.3d 773 [239 Cal.Rptr. 726], the Fourth District Court of Appeal upheld the constitutionality of Civil Code section 4727 under an equal protection challenge. In that case, Washington State sought reimbursement, from a father, for AFDC paid to the mother and minor child. The parties stipulated that mother and father had a shared physical custody arrangement whereby father had custody of the minor child for more than 30 percent of a 365-day period. The parties also acknowledged that the minimum child support award required under the Agnos Act *without* considering the shared physical custody arrangement was $284 per month. (*Id.,* at p. 775.)

At trial, the father in *Cobb* challenged the constitutionality of Civil Code section 4727. He claimed that the section impermissibly classified parents into two groups: those whose children received AFDC and those whose children did not. The trial court agreed, struck down the statute, and reduced the father's support obligations from $284 per month to $200 per month to account for the time father spent with the child.

On appeal, the Fourth District reversed. It concluded that: "The two classifications bear an obvious, rational relationship to a legitimate state purpose. First, we are mindful that the monies paid out in AFDC benefits are subject to an action by the state for recoupment from a legally responsible parent. (See Welf. & Inst. Code, § 11350.) This statute seeks to recoup government revenue spent in maintaining the household of the custodial parent even during periods of the child's temporary absence, in order that the child may have a stable home to which to return. . . . [¶] . . . In short, the statute seeks to maximize benefits for needy families, minimize the public support burden and also to maintain a stable household for financially impoverished children. The minimum payment it imposes only on noncustodial parents whose children are supported by AFDC is rational in that this group affects the public fisc in a way non-AFDC-supported children do not." (*State of Washington* v. *Cobb, supra,* 194 Cal.App.3d at p. 777.)

The *Cobb* case is closely on point. It upheld the constitutionality of an interpretation of Civil Code section 4727 that precludes the very offset sought here by father. Section 4727 is part of the Agnos Act. As part of that act, Civil Code section 4727 applies "[i]n any proceeding where there is at issue the support of a minor child . . . ." (Civ. Code, § 4700.) As a later statute specifically on point, Civil Code section 4727 effectively supersedes

---

[10]See footnote 4, *ante,* for language of Civil Code section 4727.

section 11350, subdivision (c), at least in future support orders where AFDC benefits are involved.[11] We conclude that father is not entitled to an offset for the support and maintenance of the child while in his physical custody.

Finally, we consider father's claim that the trial court failed to consider mother's "earning capacity" when setting the parents' proportionate contributions to the child's support. Both parties agree that the trial court may properly consider the mother's earning capacity in determining temporary child support under section 11350. (See, e.g., *County of Yolo* v. *Francis* (1986) 179 Cal.App.3d 647, 651-655 [224 Cal.Rptr. 585] [Civ. Code, § 246 applied to § 11350 proceeding].) Father here relies upon Civil Code section 246, subdivision (a). That section, part of the "Uniform Civil Liability for Support Act," states in part: "When determining the amount due for support, the court shall consider the following circumstances of the respective parties: [¶] (a) The earning capacity and needs of each *party*." (Italics added.) Here, mother was not a party, so Civil Code section 246 does not directly apply. (Compare *County of Yolo* v. *Francis, supra,* 179 Cal.App.3d 647 [court considered the earning capacity of the party from whom county sought reimbursement].)

Nevertheless, the Agnos Act itself, employed by the county and trial court here, speaks directly to father's earning capacity argument. Civil Code section 4721, subdivision (a)(3), states in part: "To determine and apportion the mandatory minimum child support award at the AFDC level, the court shall also consider, *to the extent consistent with the best interests of all the children, the earning capacity of either or both parents.*"

Although the court should have considered mother's earning capacity, we see no evidence whatsoever in the record of such capacity. Moreover, there is no indication that the court did not consider her earning capacity if in fact there was such evidence. There is simply an insufficient record for us to review, there being no reporter's transcript.

The judgment (order) is affirmed.

Puglia, P. J., and Sims, J., concurred.

---

[11] We express no opinion on the continued vitality of section 11350, subdivision (c), in a county's action to recoup past benefits.