[No. E048992. Fourth Dist., Div. Two. Aug. 2, 2011.]

In re the Marriage of NATHAN and ROBIN LaMOURE.
NATHAN LaMOURE, Appellant, v.
ROBIN LaMOURE, Respondent;
SAN BERNARDINO COUNTY DEPARTMENT OF CHILD SUPPORT
SERVICES, Respondent.

808

810

**COUNSEL**

Nathan D. LaMoure, in pro. per., for Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Douglas M. Press, Assistant Attorney General, Paul Reynaga and Mary Dahlberg, Deputy Attorneys General, for Respondent San Bernardino County Department of Child Support Services.

No appearance for Respondent Robin LaMoure.

## OPINION

## CODRINGTON, J.—

I

### INTRODUCTION[1]

Petitioner Nathan LaMoure (father) appeals from a trial court order denying his claim of exemption and motion to quash and recall a levy on his individual retirement account rollover (IRA account) to recover child and spousal support arrears. Father contends his due process rights were violated because he did not receive notice of the levy and there was no court assignment order or writ of execution authorizing the levy on his retirement accounts. Father also argues his retirement accounts could not be levied upon because they were not income; the levy improperly included spousal support; the support orders could not be enforced by levy because they were retroactively modifiable; and father's funds could not be levied upon because he was a " 'custodial parent.' " In addition, father asserts that the trial court erred in rejecting his claim of exemption based on hardship.

Respondent in this appeal is "the Public Interest," represented by the local child support agency, San Bernardino County Department of Child Support Services (local DCSS), and the state Attorney General, on behalf of California's Department of Child Support Services (State DCSS), under Family Code sections 17406 and 17407.[2]

---

[1] Father has requested judicial notice of the following documents: (1) printout of a case report showing a request for stay was filed July 30, 2009, and the trial court granted the stay, pending appeal; (2) notice of stay of trial court proceedings; (3) trial setting conference minute order, dated January 8, 2010, stating the amount of support arrears and amount of support collected; (4) minute order dated April 9, 2010, regarding a hearing on an order to show cause regarding custody and visitation; (5) portions of California's Department of Child Support Services, Child Support Regulations, Manual of Policies and Procedures, including chapter 12, and (6) chapters 10 and 11, and appendix A of the U.S. Department of Health and Human Services, Administration for Children and Families, Office of Child Support Enforcement, Essentials for Attorneys in Child Support Enforcement manual. Mother did not file any opposition to father's judicial notice request.

Father's request for judicial notice is granted as to items Nos. 5 and 6 (but not as to the veracity of the contents) on the basis the request is unopposed, the items are relevant to the issues raised in the instant appeal, and the excerpts from the state and federal manuals may assist in construing applicable statutes and codes. Judicial notice as to items Nos. 1 through 4 is denied as the items are irrelevant to the issues before us, primarily because they concern matters occurring after the July 23, 2009, order challenged in this appeal.

[2] Unless otherwise noted, all statutory references are to the Family Code.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

Father and Robin LaMoure (mother) were married in 1993 and have two sons, born in 1995 and 1998. Father and mother separated in February 2003. In March 2003, father petitioned for dissolution of marriage.

In March 2003, the court ordered mother immediately to enter a residential alcohol treatment program. Upon her completion of the program, father and mother were to share custody on a 50/50 basis. The court also ordered father to enroll in an anger management class.

In April 2003, the court ordered father, who practiced law as a sole practitioner, to pay mother $4,000 a month in child support and $3,500 a month in spousal support.

In May 2003, father filed a request for an order to show cause (OSC) to modify child and spousal support.

In May 2003, the court granted mother's request to live in the family residence and ordered father to live in the couple's other home, which he used as an office. Custody and visitation were to remain the same.

In November 2003, the court heard mother's OSC for attorney's fees and costs, and ordered father to pay support to mother's attorney instead of paying "bills and such as in-lieu support." Again, the court reserved jurisdiction on the issues of arrears and support setoffs. The child and spousal support remained the same. The court also ordered father to pay $14,000 in child support arrears.

After several continuances, father's OSC request to modify support was heard on February 2, 2004. The court reduced child support to $2,108 a month and spousal support to $2,012 a month, beginning on October 15, 2003. The court reserved determination of the issue of support arrears retroactive to May 2003. A hearing on the issue was set for February 18, 2004.

At the February 18, 2004, contested hearing on arrears, the court ordered father to pay $15,000 in arrears within seven days, toward support, and an additional payment of $6,500 by March 5, 2004. Later, the court set another hearing on support and arrears in June 2004, and continued the hearing to August 30, 2004.

At the August hearing, the court ruled that the money used to clean up the family residence and for bills could not be used to offset support. The court requested the local DCSS to submit documentation to establish the amount of support arrears. In February 2005, the court ordered father to send all support to the local DCSS.

In July 2005, father filed a request for an OSC to modify support. In October 2005, he also filed a request for an OSC for support offsets. On December 22, 2005, the court ordered child support reduced to $2,006 a month, beginning January 1, 2006.

On February 21, 2007, the court ordered father to pay $4,000 toward child and spousal support arrears by February 28, 2007. That same day father filed another OSC request for support modification.

During a hearing on father's OSC for child and spousal support modification and offsets, the court on May 15, 2007, denied father's request to offset support arrears with payments made in lieu of support prior to May 2003. The court found child support arrears amounted to $17,897.13 and spousal support arrears were $13,827.60. The court continued the hearing.

At the continued OSC hearing regarding support modification on July 11, 2007, the court found that father was entitled to credit for Social Security benefits paid to mother for child support. The hearing was continued to December.

At the OSC hearing in December 2007, the court ordered payment of mother's inpatient treatment in lieu of $7,000 in spousal support. Reallocation of payment of expert fees was to be determined later, at the time of trial.

On April 2, 2009, the State DCSS provided Morgan Stanley with an order to withhold funds from father's retirement accounts for the purpose of collecting child support arrears. In response, father filed a levy claim of exemption. In April 2009, father also moved ex parte for an injunctive order, order to quash, and order to recall a levy by the State DCSS, on father's retirement plans.

On May 12, 2009, the trial court found that service of notice of the levy was proper and that the support arrears obligation subject to levy included spousal support. The court denied father's ex parte motion to quash or recall levy on father's IRA account. A hearing on father's claim of exemption based on hardship was set for May 22, 2009.

On May 22, 2009, the court heard argument on father's hardship exemption claim and took the matter under submission. Father has not provided this

court with a reporter's transcript of the hearing or of any other proceedings. The court denied father's claim of exemption as to father's Morgan Stanley IRA account and granted, without prejudice, father's claim of exemption as to his Morgan Stanley retirement plan account. The court stated that its order was "based upon a balancing of the hardships to the children and the parties."

The trial court granted a temporary stay of its order until July 23, 2009, when the court heard father's subsequent claim of exemption and motion to quash levy on father's IRA account. On July 23, 2009, the court denied father's motion and claim of exemption.

III

NOTICE OF LEVY

Citing numerous state and federal statutes, father contends the levy on his IRA account violated his due process rights because he was not provided with proper notice of the levy. We disagree.

A. *Statutory Procedures for Levy on Financial Institution Accounts*

The State of California has devised a system of ensuring automatic payment of child support arrears by means of levying on support obligors' assets in financial institution accounts. Under the Financial Institution Data Match (FIDM) system, the State DCSS provides financial institutions with the State DCSS's files of delinquent support obligors. The financial institutions are required to determine if there is a match with their own account holders. Upon receiving a notice or order to withhold issued by the State DCSS, financial institutions are required to notify the obligor of the notice or order, and withhold from the obligor's accounts the amount of support arrears stated in the notice or order. (§§ 17453, 17454.)

Before the funds are transmitted to the State DCSS, the obligor may file with the local DCSS a claim of exemption based on financial hardship. (§ 17453, subd. (j)(3).) Subdivision (j)(3) of section 17453 provides that, "If any of the conditions set forth in paragraph [(j)](1) exist, an obligor may apply for a claim of exemption . . . for an amount that is less than or equal to the total amount levied. The sole basis for a claim of exemption under this subdivision shall be the financial hardship for the obligor and the obligor's dependents." (§ 17453, subd. (j)(3).)

"The superior court in the county in which the local child support agency enforcing the support obligation is located shall have jurisdiction to determine the amount of exemption to be allowed. The court shall consider the needs of

the obligor, the obligee, and all persons the obligor is required to support, and all other relevant circumstances in determining whether to allow any exemption pursuant to this subdivision. The court shall give effect to its determination by an order specifying the extent to which the amount levied is exempt." (§ 17453, subd. (j)(7).)

The obligor is also entitled to an automatic exemption of $3,500 if any circumstances specified in subdivision (j)(1) of section 17453 apply. Those circumstances include when "[a]t least 50 percent of the obligated parent's earnings are being withheld for support." (§ 17453, subd. (j)(1)(C).)

## B. *Discussion*

There is no question father is entitled to notice before funds are removed from his IRA account. Because father received sufficient notice, we reject his due process challenge based on deficient notice. Father cites numerous statutes in support of the proposition that the State DCSS failed to provide proper notice of the levy. (42 U.S.C. § 666(a)(6), (8)(B)(iv), (b)(4)(A); Fam. Code, §§ 4014, subd. (a), 4201, 4204, 5232, 5234, 17400, subd. (k), 17406, 17453, 17454, 17456, subd. (b); Code Civ. Proc., §§ 699.530, 699.540, 699.545.)

Most of the statutes father cites provide, in general terms, that compliance with procedural due process requirements, including notice, is required before withholding funds payable as support. In addition, Code of Civil Procedure sections 699.530, 699.540, and 699.545 are not helpful because they make no reference to providing notice of levy against a financial institutional account to recover support arrears. The statutes merely describe what constitutes a proper notice of levy. Father is not challenging the form or contents of the notice of levy. Rather, he is arguing the state completely failed to give him any notice at all.

Sections 5232 and 5234 are inapplicable because they concern service of an assignment order on an employer. Section 17400 is discretionary, not mandatory, and is inapplicable to State DCSS enforcement of support arrears by levy. Section 17406 is also inapplicable. Section 4014, subdivision (a) is inapplicable because it concerns notice of an order for child support issued or modified, not notice of levy. Sections 4201 and 4204 are also inapplicable since they do not mandate notice of a levy for support arrears. Sections 17453 and 17454 do not discuss notice of levy on the support obligor. These statutes pertain to implementation of the FIDM system and the manner in which financial institutions must respond to receiving a notice or order to withhold, issued by the State DCSS.

■ Section 17456, subdivision (b) is applicable but does not state that the State DCSS must provide the support obligor with notice of levy. Rather, the

statute requires the financial institution, upon receiving a notice or order to withhold from the State DCSS, to provide the obligor with notice. Subdivision (b) states in relevant part: "In the case of a deposit account or accounts for which this notice to withhold applies, *the depository institution shall send a notice* by first-class mail *to each person named on the account* or accounts *included in the notice from the department*, provided that a current address for each person is available to the institution. This notice shall inform each person as to the reason for the hold placed on the account or accounts, the amount subject to being withheld, and the date by which this amount is to be remitted to the department. . . ." (§ 17456, subd. (b), italics added.) The record indicates that, in compliance with section 17456, subdivision (b), Morgan Stanley provided father with the required notice of levy.

Father adds in his appellant's reply brief that Code of Civil Procedure section 700.010, subdivision (a) required the State DCSS to give father notice of the levy. But father did not raise this argument in his appellant's opening brief and therefore forfeited the argument. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794 [67 Cal.Rptr.2d 350].) In any case, father's reliance on the statute is misplaced. Code of Civil Procedure section 700.010, subdivision (a), concerns enforcement of support arrearages by the local DCSS, whereas the instant case involves a State DCSS levy enforcing arrears through the FIDM system.

Father cannot prevail on his notice challenge because the record shows that father received sufficient notice of the levy and a full opportunity to challenge it. Father indicated in his ex parte motion to quash the levy, that he received notice that the local DCSS was levying on his IRA account. He stated in his ex parte motion that he was seeking to quash and recall the "Levy/*Notice* by DCSS in [father's] IRA Rollover at Morgan Stanley." (Italics added.)

Attached to his ex parte motion is a copy of a letter dated April 9, 2009, from Morgan Stanley to father, informing him that Morgan Stanley received a notice of withholding assets from father's accounts, and therefore Morgan Stanley believed it was obligated to turn over assets in father's accounts. Morgan Stanley enclosed a copy of the state's notice of withholding and advised father that Morgan Stanley would not transmit assets in father's account until expiration of the time specified in the enclosed notice to challenge the levy. Morgan Stanley further advised father that, if father wished to challenge the transmission of his funds, he should provide Morgan Stanley with appropriate documents.

In addition, father states in his points and authorities supporting his motion to quash and recall the levy, that "By a notice dated 4/2/09 DCSS gave notice of levy to Morgan Stanley . . . ." Father further asserted that the local

DCSS did not serve the notice on him but he "did receive a communication from Morgan [Stanley] a full week later." Also in a letter dated April 20, 2009, to mother's attorney, father acknowledged Morgan Stanley notified him of the State DCSS's levy of $126,507 in support arrears.

Father further concedes in his appellant's opening brief that he did ultimately receive notice of levy "second hand and later had a later day in court." In response to the notice of levy, he filed a claim of exemption and motion to quash the levy. After conducting a full and meaningful hearing on father's claim of exemption and motion to quash, the trial court found that father had received notice of the levy. Even assuming, without deciding, that father was not provided with proper statutory notice of levy on his IRA account, any technical failure to comply with notice requirements did not invalidate the levy since father had actual notice. (*Gortner v. Gortner* (1976) 60 Cal.App.3d 996, 1001 [131 Cal.Rptr. 919].)

## IV

### WHETHER A COURT ORDER AUTHORIZING LEVY IS REQUIRED

Father argues the levy on his IRA account was procedurally flawed because there was no court order authorizing the local DCSS to levy or withhold funds from his IRA account. We disagree.

■ First, the State DCSS, not the local DCSS, levied on father's accounts. More importantly, the levy was proper under the statutory scheme allowing the State DCSS to levy on financial institution accounts by issuing a notice or order of withholding on the support obligor's financial institution account, without a court order expressly authorizing the levy. (§§ 17453, 17454.) The record shows this was done.

■ Under federal law, all support orders shall be entitled to judgment status. In addition, "amendments to the Social Security Act have made it a State requirement that unpaid support become a *judgment by operation of law*." (U.S. Dept. of Health & Human Services, Admin. for Children & Families, Office of Child Support Enforcement, Essentials for Attys. in Child Support Enforcement (3d ed.) ch. 10, italics added (federal child support manual).[3]) States are therefore required to enact statutory procedures requiring payment of child support under any child support order, with a judgment by operation of law having the "full force, effect, and attributes of a

---

[3] <http://www.acf.hhs.gov/programs/cse/pubs/2002/reports/essentials/c10.html> (as of Aug. 2, 2011).

judgment of the State, including the ability to be enforced, [¶] . . . entitled as a judgment to full faith and credit in such State . . . ." (Federal child support manual, *supra*, ch. 10, citing 42 U.S.C. § 666(a)(9)(C) & 45 C.F.R. § 303.106 (2000).)

■ The federal child support manual notes that state courts have consistently ruled that child support becomes a judgment as the obligation becomes due. "Consequently, the judgment automatically increases as subsequent payments are missed." (Federal child support manual, *supra*, ch. 10.)

■ Consistent with federal law, the California Legislature has enacted a statutory system allowing the State DCSS to levy on a delinquent support obligor's financial institution accounts. (§§ 17453, 17454, 17456.) A court order authorizing such a levy is not required. The levy is founded on an existing support order, overdue support, and the existence of an order by operation of law requiring payment of support arrears.

Father also complains of noncompliance with certain judicial prerequisites. He claims the trial court should have made an order requiring support be paid under section 4014, subdivision (a). This statute provides: "(a) Any order for child support issued or modified pursuant to this chapter shall include a provision requiring the obligor and child support obligee to notify the other parent or, if the order requires payment through an agency designated under Title IV-D of the Social Security Act (42 U.S.C. Sec. 651, et seq.), the agency named in the order, of the name and address of his or her current employer." As is apparent, this provision is irrelevant. It simply requires the parties to provide each other with employer information and the name of the agency which is to receive support payments, in the event support is to be paid to a particular agency, such as the local DCSS.

Father complains the court did not comply with sections 4201, subdivision (b) or 4204. Section 4201, subdivision (b) provides in relevant part that "In any proceeding where a court makes or has made an order requiring the payment of child support to the person having custody of a child for whom support may be ordered, the court *may* do either or both of the following: [¶] . . . [¶] (b) Direct the local child support agency to appear on behalf of the minor children in any proceeding to enforce the order." (Italics added.) This is a discretionary provision and father has not demonstrated why this requires reversal in the instant case.

Section 4204 provides: "[T]*he local child support agency may issue a notice directing that the payments shall be made to the local child support agency*, another county office, or the State Disbursement Unit pursuant to Section 17309. The notice shall be served on both the support obligor and

obligee in compliance with Section 1013 of the Code of Civil Procedure. The local child support agency shall file the notice in the action in which the support order was issued." (Italics added.)

As father acknowledges in his appellant's opening brief, mother requested the local DCSS to provide support enforcement services. It appears from the trial court register of actions that the local DCSS filed a notice of where support payments were to be sent, pursuant to section 4204. As to father's complaint that there was no order or statutory authority authorizing the local DCSS's collection activity, the State DCSS, not the local DCSS, was responsible for the levy on father's IRA account, and the State DCSS complied with the FIDM notice requirements by issuing an order and notice of withholding, which Morgan Stanley provided to father.

## V

### FINANCIAL INSTITUTION FUNDS SUBJECT TO LEVY

Father contends that assets in his IRA account were not subject to levy. Citing sections 5103, 17453, subdivision (j)(1) and (2), and 42 United States Code section 666(a), father argues that levy is limited solely to income and not all of the assets in his IRA account were income.

Section 5103 allows levy on an employee benefit plan to collect child support arrears. The statute provides: "(a) [A]n order for the payment of child, family, or spousal support may be enforced against an employee benefit plan regardless of whether the plan has been joined as a party to the proceeding in which the support order was obtained." In the instant case, the plan was joined as a party.

Section 5103 further states in subdivision (b): "[A]n execution lien created by a levy on the judgment debtor's right to payment of benefits from an employee benefit plan to enforce an order for the payment of child, family, or spousal support continues until the date the plan has withheld and paid over to the levying officer . . . the full amount specified in the notice of levy, unless the plan is directed to stop withholding and paying over before that time by court order or by the levying officer." Under this statute, levy on father's IRA account was proper.

### A. *Earnings Deduction Exemption*

Nevertheless, father argues that the trial court should have quashed the levy because the levy encompassed assets that were not income and assets that were exempt income, since at least 50 percent of father's income was

already being withheld by the local DCSS (earnings deduction exemption). In support of this contention, father cites sections 17453, subdivision (j)(1)(C), (2), 17454, and 42 United States Code section 666(a), (b).

Section 17453, subdivision (j)(1)(C) states: "Each county shall notify the department upon the occurrence of the circumstances described in the following subparagraphs with respect to an obligor of past-due support: [¶] . . . [¶] (C) At least 50 percent of the obligated parent's earnings are being withheld for support."

■ Under subdivision (j)(2) of section 17453, if at least 50 percent of the obligor's earnings are being withheld for support, "the assets of an obligor held by a financial institution are subject to levy . . . . However, the first three thousand five hundred dollars ($3,500) of an obligor's assets are exempt from collection under this subdivision without the obligor having to file a claim of exemption." ■ Section 17454 merely provides procedures for levying against a financial institution account.

Title 42 United States Code section 666 is not applicable since it does not pertain to FIDM levies. Rather, 42 United States Code section 666(a), (b) state that each state must have in effect laws requiring the use of specified procedures for enforcing support obligations through withholding wages. The instant case does not concern withholding father's wages.

None of the statutory authority father cites precludes the trial court from levying on assets in his IRA account, and father has not demonstrated the trial court abused its discretion in denying his claim of exemption and motion to quash as to his IRA account. Father stated in his supplemental declaration, in support of his claim of exemption, that his IRA account was valued at around $85,000. The source of deposits to the account was rollover distributions from his prior employer's qualified pension. In addition to his IRA account, father had a pension plan account, from which he received, as of October 2008, a $5,666 monthly defined benefit, which was not subject to levy.

Father complains that over 50 percent of his Social Security income is already being levied by the local DCSS to pay child support, but he is also receiving $5,666 in monthly income from his pension plan, which is not subject to levy. In his financial statement, he states he receives $865 a month in Social Security and an additional $865 a month is withheld to pay for child support. Based on this evidence, the trial court could reasonably find that at least 50 percent of father's earnings were *not* being withheld for support and thus father was not entitled to an exemption under section 17453, subdivision (j)(1)(C).

## B. *ERISA*

Father also argues in his appellant's reply brief that levy on his IRA account was improper under ERISA (Employee Retirement Income Security Act of 1974[4]), because the IRA account is funded by his prior employer's contributions (ERISA § 206(d)(1); 29 U.S.C.A. § 1056(d)(1)). ERISA has written into it restrictions on assignment or alienation, and from levy garnishment or attachment. Since father did not raise this argument or even cite ERISA in his appellant's opening brief, he forfeited the argument. (*Campos v. Anderson, supra,* 57 Cal.App.4th at p. 794.)

■ Furthermore, federal law allows payment of support arrears from an ERISA employee benefit plan: "Federal courts have consistently held that 'a garnishment order [on pension benefits subject to ERISA] used to satisfy court ordered family support payments is impliedly excepted from preempted state law relating "to any employee benefit plan," [citations] and also from the alienation and assignment proscription of ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1).' [Citation.] 'Indeed, an overall congressional purpose not to interfere [by ERISA] with the States' power to enforce family support obligations may be gleaned from judicial interpretation of exemption provisions in other federal statutes . . . . "[T]he usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief." ' [Citations.]" (*Parscal v. Parscal* (1983) 148 Cal.App.3d 1098, 1105 [196 Cal.Rptr. 462].)

## VI

## SPOUSAL SUPPORT

Father contends the levy on his IRA account improperly included withholding assets to pay spousal support arrears.

■ Under section 17000, subdivision (b), the term "child support order" encompasses spousal support, as well as child support. Section 17000, subdivision (b) states: " '*Child support order*' means any court order for the payment of a set or determinable amount of support by a parent or a court order requiring a parent to provide for health insurance coverage. 'Child support order' *includes any court order for spousal support* or for medical support to the extent these obligations are to be enforced by a single state

---

[4] Title 29 United States Code section 1001 et seq.

agency for child support under Title IV-D."[5] (Italics added.) ▮▮▮ This definition of "child support order" governs the construction of division 17 statutes, including statutes on child support services and child support enforcement, "unless the context requires otherwise." (§ 17000.)

Father argues this definition of child support, which includes spousal support, is inapplicable here because the "context requires otherwise" (§ 17000), since the instant case is not a title IV-D case, in which the children are receiving public assistance, and since mother did not assign child support to the State DCSS.

But the record shows that, to the contrary, the instant case is a title IV-D case. Mother requested the local DCSS to enforce child and spousal support under section 17400, subdivision (a), and father was ordered to send all support payments to the "Department of Child Support Services." Regardless of whether the children were receiving public assistance and the support was assigned to the state as reimbursement, father's IRA account was subject to levy as to both child and spousal support since mother had requested the local DCSS to enforce support against father.

▮▮▮ Section 17400, subdivision (a) states in relevant part: *"The local child support agency* shall take appropriate action, including criminal action in cooperation with the district attorneys, to establish, modify, and *enforce child support and, if appropriate, enforce spousal support orders* if the child is receiving public assistance, including Medi-Cal, and, *if requested, shall take the same actions on behalf of a child who is not receiving public assistance . . . ."* (§ 17400, subd. (a), italics added.) This provision allows enforcement of spousal support, along with child support, when, as in the instant case, a parent has requested the local DCSS to provide child support enforcement services.

The statutory authority father cites (42 U.S.C. § 654(4)(B)(ii); 45 C.F.R. §§ 302.31(a)(2), 301.1 (2010)) is either inapplicable or actually supports the proposition that withholding assets in father's IRA account to pay spousal support was proper. Title 45 Code of Federal Regulations part 302.31(a)(2) (2010) states: "The State plan shall provide that: [¶] (a) The IV-D agency will undertake: [¶] . . . [¶] (2) . . . to secure support for a child or children from any person who is legally liable for such support, using State laws regarding intrastate and interstate establishment and enforcement of support obligations. Effective October 1, 1985, *this includes securing support for a spouse or*

---

[5] Title IV-D is a provision of the federal Social Security Act. (42 U.S.C. § 651 et seq.) Title IV-D "imposes a series of obligations on the states, including the requirement that the state provide services related to the enforcement of child support obligations. [Citation.]" (*County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1317 [93 Cal.Rptr.2d 524].)

*former spouse who is living with the child or children, but only if a support obligation has been established for that spouse and the child support obligation is being enforced under the title IV-D State plan.*" (Italics added.) The instant case qualifies under this provision. Levy against father's IRA account to recover both child and spousal support arrears was proper.

## VII

## RETROACTIVELY MODIFIABLE SUPPORT

Father contends the levy was improper because the support orders were retroactively modifiable and subject to setoff. The trial court ordered support in April 2003, with support modified in February 2004 and December 2005. Father argues that the trial court should have quashed the levy and granted the claim of exemption because the support awarded in the 2003 judgment and subsequent modified orders would likely exceed the subsequently ordered support modifications and support payments made since 2003. Father claims that, because the trial court deferred to the time of trial his motions to modify support, the support was retroactively modifiable, back to the date of the original support order. Therefore the deferred reallocations and setoffs should relate back to the initial support order in April 2003 and would exceed the levy amount.

Father's argument is premised on the incorrect assumption the support orders were retroactively modifiable. Title 42 United States Code section 666(a)(9)(C) states that each state must have in effect laws requiring the use of procedures requiring that any payment of support, under a child support order, is on or after the date it is due "not subject to retroactive modification by such State or by any other State; except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor."

In addition, 45 Code of Federal Regulations part 303.106 (2010) states: "(a) The State shall have in effect and use procedures which require that any payment or installment of support under any child support order is, on and after the date it is due: [¶] (1) A judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, *including the ability to be enforced*; [¶] (2) Entitled as a judgment to full faith and credit in such State and in any other State; and [¶] (3) *Not subject to retroactive modification* by such State or by any other State except as provided in paragraph (b) of this section." (Italics added.)

Paragraph (b) of 45 Code of Federal Regulations part 303.106 (2010) states: "The procedures referred to in paragraph (a)(3) of this section may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor." (See federal child support manual, *supra*, ch. 11.)

■ California statutes likewise preclude retroactive modification of original support orders, other than to the date "of filing the petition, complaint, or other initial pleading" (§ 4009) or in a few other instances inapplicable to the instant case. As to subsequent modification orders, section 3653 provides in relevant part: "(a) An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date, except as provided in subdivision (b) or by federal law (42 U.S.C. Sec. 666(a)(9))."

■ Father argues that at the hearing on the levy, the local DCSS did not account for many of the existing and prospective levy setoffs, including payment of Social Security benefits paid to mother and in-lieu payments expressly reserved for reallocation at trial. Father asserts that determination of the setoffs should have been determined at trial before any collection by levy of support arrears. He complains that at the claim of exemption hearings, the trial court was "reminded of prior proofs and estimates before it of around a[] $150,000 reduction in the amount claimed by DCSS on retroactive determination ALONE." Father has failed to establish this amount of setoffs and exemptions. He also has not provided the reporter's transcript of the hearings on the claim of exemptions and levy. "Where the record is silent, all intendments and presumptions are indulged to support the judgment on those matters, and error must be affirmatively shown. [Citation.] Given the incompleteness of the record, appellant has failed to carry his burden to show affirmative error." (*Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1308 [67 Cal.Rptr.2d 695].)

The support orders are not retroactively modifiable and became enforceable judgments at the time of entry, subject to levy. As to whether father is entitled to various setoffs and reallocations, this is a separate factual matter requiring findings by the trial court. Father claims the trial court deferred to the time of trial determination of this issue. Regardless of whether this is the case, the levy was proper.

VIII

NONCUSTODIAL PARENT

Father argues that, because he is a "custodial parent," the local DCSS does not have authority to levy on his financial institution accounts to recover child support arrears. Father claims that, under sections 17450 to 17460, the local DCSS can only enforce support against a noncustodial parent. Father acknowledges that section 17453, subdivision (a) refers to "obligors," rather than "noncustodial parents," but, without citing any supporting authority, asserts that the term "obligors" in this context is the equivalent of "obligor noncustodial parents."

As father notes, "noncustodial" is not defined in the Family Code. Father relies on a Wikipedia definition of noncustodial. We do not consider Wikipedia a sufficiently reliable source. Father also cites the definition of "custodial" provided in California's Department of Child Support Services, Child Support Regulations, Manual of Policies and Procedures (state child support services manual). (Div. 12, ch. 12-701 <http://www.childsup.ca.gov/Resources/ChildSupportRegulations/tabid/144/Default.aspx> [as of Aug. 2, 2011].) "Custodial Parent" is defined as "the person with legal custody under a court order."

Father fails to mention that the manual also defines the term "noncustodial parent" as "any individual who does not have primary physical custody of the child(ren) and who is legally responsible for providing financial support for the dependent child(ren)." (State child support services manual, *supra*, ch. 12-701.)

The court in *County of Ventura v. George* (1983) 149 Cal.App.3d 1012 [197 Cal.Rptr. 245] (*George*), considered the definitions of custody and noncustodial in addressing the mother's contention that the trial court erred in ordering her to reimburse welfare funds expended for the support of her son. When the mother received the funds, her son was living with his father. The mother argued that she was not obligated to reimburse the county because she was named as the custodial parent in the judgment of marital dissolution. (*Id.* at p. 1014.) Welfare and Institutions Code former section 11350 authorized recovery only from noncustodial parents.

The *George* court rejected the mother's argument, noting that the court must look beyond the form of the language contained in the marital dissolution judgment and instead focus on the actual relationship that existed between the child and parent. (*George, supra*, 149 Cal.App.3d at p. 1016.)

The court in *George* noted that "sufficient statutory direction does exist which can provide guidance in formulating a precise understanding of these terms." (*Id.* at p. 1017.)

In discussing the meaning of the terms, the *George* court explained: "Civil Code section 5151, subdivision (8) defines 'physical custody' as 'actual possession and control of the child.' This definition comprises part of the Uniform Child Custody Jurisdiction Act (UCCJA), which is contained within the Family Law Act. (The Family Law Act covers Civ. Code, § 4000 through § 5174.) The legislature placed this definition in the Family Law Act because it recognized the possibility of one having custody of a child without actually obtaining a court order to that effect. The acknowledgement by the legislature that a court decree is not the exclusive manner for acquiring custody demonstrates that a person may become a custodial parent in more than one fashion." (*George, supra,* 149 Cal.App.3d at p. 1017.) The court in *George* concluded that "a person's status as a custodial parent is directly related to one's actual possession and physical control of the dependent child." (*Id.* at p. 1018.)

Here, we look to the record to determine whether father was a noncustodial parent based on factors such as the actual "possession and physical control of the dependent child[ren]." (*George, supra,* 149 Cal.App.3d at p. 1018.) Based on the above definitions of custodial and noncustodial parent, the trial court could have reasonably found that father was a noncustodial parent who did not have primary custody, since the most recent custody order, entered on November 3, 2005, stated that the children were to live with mother, with "visitation" with father on the first, third and fifth weekends.

Furthermore, whether father was a custodial or noncustodial parent is irrelevant with regard to enforcement of support arrears. This is apparent from the fact the definitions of custodial and noncustodial parent are not included in the chapter on child support enforcement, chapter 12-101 of the state child support services manual. The manual's definitions of custodial and noncustodial parent are found in chapter 12-701, which is in chapter 12-700, entitled "Franchise Tax Board (FTB) and Financial Management Services (FMS) Tax Refund Intercept Regulations." This indicates that, as to enforcement of support arrears, it is of no consequence as to whether a parent is a custodial or noncustodial parent.

This is also reflected in the state support enforcement statute, section 17522. The wording of section 17522 does not limit enforcement by levy to "noncustodial parents." Rather, the statute uses the term "obligor," which includes any parent who owes support, regardless of whether the parent is the custodial or noncustodial parent. Section 17522 states: "(a) Notwithstanding

any other law, if any *support obligor* is delinquent in the payment of support for at least 30 days and the local child support agency is enforcing the support obligation pursuant to Section 17400, the local child support agency may collect the delinquency or enforce any lien by levy served on all persons having in their possession, or who will have in their possession or under their control, any credits or personal property belonging to the *delinquent support obligor*, or who owe any debt to the obligor at the time they receive the notice of levy. [¶] (b) A levy may be issued by a local child support agency for a support obligation that accrued under a court order or judgment if the *obligor* had notice of the accrued support arrearage as provided in this section, and did not make a timely request for review." (Italics added.)

█ Applying the familiar rules of statutory construction, we conclude that, when it comes to collecting unpaid support arrears, levy is a proper means to recover unpaid support, regardless of whether the obligor is the custodial parent or noncustodial parent. █ " 'The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. . . . The statute " 'must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . .' " ' " (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 994 [94 Cal.Rptr.2d 643].)

Even though some of the federal and state child support codes differentiate between custodial and noncustodial parents, we are unconvinced that enforcement of support by levy turns on whether a parent is a custodial parent. Thus, regardless of whether father is a custodial or noncustodial parent, the state has authority to levy on his IRA account for the purpose of collecting unpaid support.

## IX

## THE HARDSHIP EXEMPTION

Father contends the trial court erred in disallowing a hardship exemption to the state levy against his IRA account. He claims that under 42 United States Code section 666(a)(1), (8), (b)(1) to (4), and Code of Civil Procedure section 706.030, he is entitled to a hardship exemption.

Title 42 United States Code section 666(a) describes the statutorily prescribed procedures required to improve effectiveness of child support enforcement. Subdivision (b) states the procedures for withholding amounts from

income as support. Code of Civil Procedure section 706.030 discusses the ramifications of a withholding order for support. These statutes are merely procedural in nature. They are not dispositive of father's hardship claim of exemption.

On the other hand, section 17453, subdivision (j)(3), which father does not cite, addresses the hardship exemption. It states that the court can, in its discretion, grant an exemption for hardship. The statute provides: "If any of the conditions set forth in paragraph (1) exist, an obligor may apply for a claim of exemption . . . for an amount that is less than or equal to the total amount levied. The sole basis for a claim of exemption under this subdivision shall be the *financial hardship* for the obligor and the obligor's dependents." (Italics added.)

The hardship exemption involves questions of fact and is subject to the trial court's exercise of discretion. " 'A trial court's exercise of discretion will not be disturbed on appeal unless, *as a matter of law*, an abuse of discretion is shown—i.e.,—where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances. [Citations.]' [Citations.]" (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 [274 Cal.Rptr. 911].) "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].)

Father has not established on appeal that the trial court abused its discretion in denying the hardship exemption. The trial court granted a claim of exemption as to father's defined benefit, the retirement pension plan account, leaving him with $5,666 a month in retirement income, plus $865 a month in Social Security income. Father complains that over 50 percent of his earnings are being levied by the local DCSS to pay child support. But the support withholding amounts to only $865, which is 50 percent of his Social Security income. Father stated in his financial statement that he receives $865 a month in Social Security and an additional $865 a month is withheld to pay for support.

Since father is also receiving $5,666 a month in income from his pension plan, in addition to $865 in Social Security, the trial court could reasonably find that father was not entitled to the hardship exemption. By granting a claim of exemption as to father's pension plan account, the trial court left father with resources to provide him with sufficient income during his retirement. Father fails to refute this on appeal.

X

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

McKinster, Acting P. J., and Miller, J., concurred.

A petition for a rehearing was denied August 19, 2011, and appellant's petition for review by the Supreme Court was denied November 16, 2011, S197027.