[No. G034254. Fourth Dist., Div. Three. Sept. 28, 2005.]

COUNTY OF ORANGE, Plaintiff and Respondent, v.
BRADFORD SMITH, Defendant and Appellant.

**1438**

## Counsel

Bradford Smith, in pro. per., for Defendant and Appellant.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Margarita Altamirano and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MOORE, J.**—The father of a child was engaged in the business of cabinet installation. Prior to his separation from his wife, he rented a home with sufficient space to house his business operation. After the separation, he continued to live in that rental home and to operate his business therefrom. He also took in a roommate, who paid $600 per month in rent. The father collected the rent from the roommate and applied it towards the total $1600 rental bill. He construed $600 as his own personal rent and allocated $400 to his business operation. When the court determined the amount of child support the father would have to pay, it took the $600 monthly payments from the roommate into consideration. The father contends that the court erred in doing so. We disagree and affirm the child support order. The $600 monthly payments may be construed as either sublease income or a special circumstance to be considered when evaluating the cash flow available to provide for the child.

 In addition to challenging the child support order, the father expresses deep concern over the manner in which the court system handles child custody matters and, specifically, how it allocates child custody time as between parents. In an articulate and impassioned oral argument, the father asked this court to order changes in the system and the standards by which child custody awards are determined. The father misapprehends the function of the appellate court. We are here to determine whether the trial court erred in applying existing law to the facts before it and in fashioning the child support order from which the father has perfected an appeal. It is not the function of the appellate court either to address matters from which no appeal was taken or to write new law. As we explain in greater detail below, we do not address the father's many concerns that do not pertain to the child support order from which the appeal was taken.

## I

## FACTS

Bradford Smith (the father) and Parvaneh Smith (the mother)[1] were married in 1985 and had a son in 1998. By the time the boy was three years old, the father and mother were suffering substantial marital difficulties. They separated and dissolution proceedings ensued. The father and mother became embroiled in a heated dispute concerning child custody and child support.

In May 2001, the County of Orange, represented by the district attorney's office, sought payment of child support on behalf of the child. The father opposed the request. In his September 17, 2001 income and expense declaration, the father stated that he had earned $16,800 in the preceding 12 months and lived with his child and a friend.

In September 2001, the court ordered the father to pay $224 per month in temporary child support, beginning September 1, 2001. The order stated that "[c]hild support [had been] ordered without benefit of [a] full evidentiary hearing and [would] be redetermined 'de novo' at a [subsequent] hearing."

On November 29, 2001, the father and mother agreed to a shared custody schedule and a stipulation and order on order to show cause was entered accordingly. Per the custody schedule, the father would have custody of the child from Thursday through either Sunday evening or Monday evening (alternating every other week) and the mother would have custody from either Sunday evening or Monday evening until Thursday morning.

On December 12, 2002, the father filed an order to show cause pertaining to child support. He requested that the amount of child support he paid be reduced to zero. He explained that he had been planning to resolve the child support issue after the custody issues were resolved. However, the father decided he could not wait any longer. He stated: "The reason I am pursuing this now is that the DMV is threatening to take away my drivers license as a result of this injustice by the court."

The Orange County Department of Child Support Services (County) filed a motion seeking child support on March 20, 2003. Again, the father opposed the motion, requesting that he pay nothing for child support. In his May 7, 2003 income and expense declaration, the father stated that he was a cabinet

---

[1] Hereafter, we refer to the parties as "the father" and "the mother" as a convenience to the reader. We do not intend this informality to reflect a lack of respect. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475–476, fn. 1, 274 Cal.Rptr. 911.)

installer who had earned $13,415.40 in the preceding 12 months. On July 2, 2003, he filed a declaration wherein he stated that he lived in a rented home from which he operated his business. The declaration implied that he had at least one roommate and that he claimed a portion of his rental costs as a tax deduction with respect to his business.

The findings and recommendation of the commissioner were entered on July 11, 2003. The commissioner recommended that the father pay current child support of $31 per month and a child support arrearage of $4,282, payable at the rate of $80 per month beginning July 1, 2003. The commissioner found that the father had a roommate who paid rent, but did not find that the roommate's rental payment constituted income to the father. On the other hand, she found that the father deducted a portion of his rent as a business expense on his tax return and that the amount of the deduction should be "add[ed] back in" because the deduction increased his cash flow.

The matter remained unresolved several months later and was heard before a judge. The judge granted the father's request to file a new income and expense declaration and directed him to submit a declaration listing any facts and legal argument that would support his argument that the court ought not utilize the child support guidelines. The father filed his declaration on December 29, 2003. In that 16-page declaration, the father focused primarily on the mother's behavior and what he called "institutional prejudice" and bias.

The judge expressed his ruling in a minute order dated December 30, 2003. He established the amount of the child support arrearage as $4,855 and ordered the father to pay child support including arrearages in the amount of $119 per month, beginning January 1, 2004. He also directed the County to prepare a formal order and a proposed statement of decision.

On April 14, 2004, the father filed his objections to the County's proposed statement of decision and order. In his objections, the father stated, among other things, that he had a roommate with whom he had shared his rental home "from a few months after the separation until the present time." The father explained the rental arrangement thus: "[The father's] share of the monthly rent is $600, his roommate's share is $600, and $400 is expensed by [the father's] business, which occupies the two-car garage and the largest bedroom and is deducted as a business expense on his income tax filings." He also asserted that his monthly income for 2003 was $972, whereas the mother's monthly income for 2003 was $1016.

By minute order dated April 15, 2004, the judge rejected the proposed statement of decision and rendered his own. In the statement of decision, the

judge found that in 2003 the father had netted $972 per month and that the court was adding to that $600 per month in rental income. The statement of decision provided more fully: "[The father] is [a] self-employed carpenter. He has rented a house since prior to his separation from [the mother]. He rented a house that would be large enough to accommodate his business. About two months after the parties separated, in mid-2001, [the father] sublet a room in the house to a [roommate] for $600 per month." (Capitalization omitted.) The statement of decision also indicated that the court had considered reducing the amount of the child support arrearage but decided to exercise its discretion against doing so.

The court's formal order was entered April 15, 2004. The father thereafter filed a motion for a new trial based on the inclusion of the $600 rental as income. The father argued that the commissioner had already "summarily disposed of the issue of whether [his] roommate's rent might be considered income . . . ." The father said that the judge's raising of the issue amounted to an unfair surprise. Furthermore, the father claimed that there was no evidence to support the finding that he had "sublet a room" to the friend. The father explained: "[The father] shares the residential portions of a rental home equally with his roommate. There is no evidence that respondent has any personal use of the roommate's rent. . . . [The father] simply forwards the roommate's rent directly to the landlord." The father acknowledged the accuracy of the court's finding that he had rented the house, "large enough to accommodate his business," prior to his separation from the mother.

The court, by minute order dated June 23, 2004, denied the motion for a new trial. It expressed alternative grounds therefor. First, it reiterated the finding that the father had sublet a portion of the leasehold and that the roommate's $600 rental payment constituted income to the father. Second, it stated in the alternative that there were special circumstances under Family Code section 4057, subdivision (b)(5) that made it appropriate to consider the roommate's $600 rental payments in setting child support. In addition, the court stated that the statement of decision was amended to include the ruling on the motion for a new trial.[2]

---

[2] The June 23, 2004 minute order states more fully: "Alternatively, the court finds under Family Code section 4057, subdivision (b)(5) that there are special circumstances that make it appropriate to consider the $600 payments by the roommate in setting child support. The special circumstances are these: Neither party here makes much money. [The mother] has only been able to secure low paying clerical jobs, perhaps because she spends so much time in court with [the father]. [The father] has scaled back from a reasonably high income carpentry oriented business to a lower income operation. Perhaps this happened due to economic circumstance; perhaps it occurred due to the large amount of litigation in this case . . . . In any event, the court has opted to determine that at this time the parties are maximizing their incomes. [¶] The bottom line is this: There is an extraordinarily low amount of money available for [the child's] support. If the court does not consider the $600 from the roommate

On July 23, 2004, the father filed his notice of appeal from the April 15, 2004 order.

## II

## DISCUSSION

### A. *Scope of Appeal:*

In his opening brief, the father acknowledges that he appeals from the April 15, 2004 order. At the same time, he seems to attack innumerable rulings made throughout the course of the proceedings, and indeed the entire concept of the proceedings themselves. He contends that his constitutional rights were repeatedly trampled and the rulings and proceedings were inequitable. He focuses most particularly on the proceedings that took place during a nine-month stretch, stating, "the decision of the Court for the period of March 1 through November 30, 2001 is an abuse of discretion because it is a grave miscarriage of justice." He requests that this court "reverse the child support order in whole from March 1, 2001 through November 30, 2001."

We are uncertain just how many separate orders the father intends to challenge within that nine-month period. However, the father does make clear that, at a minimum, he is challenging numerous orders granting continuances, orders pertaining to child custody and child support, and the court's failure to appoint counsel to represent him, even though paternity was not at issue.

The father admits that the November 29, 2001 stipulation resulted in an arrangement whereby he had custody of the child for about 65 percent of his waking hours and 56 percent of his total hours and that the schedule has not materially changed. However, he remains disgruntled by the pre-November 29, 2001 temporary custody arrangement, which gave him less time with the child than he later received under the stipulation. The father says, "the Court erred when it restricted [his] equal custody of [the child] during the period between March 8 and Nov. 29, 2001. The decision must be reversed because it was prejudiced by that error."[3]

---

in setting support, [the mother] would have less than $900 per month, net with which to house herself and [the child] during her 44% of parenting time. . . . That would be inequitable to her and certainly would not be in [the child's] best interests. Income or not, the $600 should be considered as part of the money available to allow [the child] to spend fairly equal time with both parents in habitable surroundings." (Capitalization omitted.)

[3] The father explains that "[the mother] extorted a lopsided custody schedule because the Court, in violation of its governing rules and over [his] objections, refused to hold any temporary custody hearing for the first eight months." The father also says, "The Court's repeated continuances violative of court rules prejudicially denied [him] due process, which

As we shall discuss, some of the father's challenges to prior orders may have been preserved, to the extent that those prior orders materially affect the final order of April 15, 2004. However, the father's challenges to other pre-April 15, 2004 orders have not been preserved.

Some of the orders made prior to April 15, 2004, such as those establishing the percentage of custody time, are reflected in the guideline child support amount. (Fam. Code, § 4055.) To that extent, they are also reflected in the April 15, 2004 order. Similarly, prior orders establishing arrearages may continue to be reflected to a degree in the April 15, 2004 order. To the extent that those prior orders affect the final order, they also may be challenged on appeal. This is so because "the reviewing court may review the . . . decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the . . . order appealed from or which substantially affects the rights of a party . . . ." (Code Civ. Proc., § 906.) However, as we will show, the father has not demonstrated error with respect to that final order or its underpinnings.

■ As to other orders made over the years, it is insufficient for him to state in a general way that the proceedings have been consistently biased, prejudiced, inequitable or violative of constitutional rights. "It is the appellant's burden to demonstrate the existence of reversible error. [Citation.]" *(Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 [115 Cal.Rptr.2d 705].) As part of that burden, the appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order. *(McComber v. Wells* (1999) 72 Cal.App.4th 512, 522–523 [85 Cal.Rptr.2d 376].) The father has failed to meet this burden.

■ In addition, the father has not told us why he waited so long to make his challenges to the various pre-April 15, 2004 orders. As the County points out, the father has not explained why his purported appeals from the various orders are not time-barred. (See, e.g., Code Civ. Proc., § 906 [reviewing court not authorized to review any order from which an appeal could have been taken]; *County of Yolo v. Worrell* (1989) 208 Cal.App.3d 471, 474, fn. 6 [256 Cal.Rptr. 259] [award of temporary child support is appealable].) In his reply brief, the father states simply that the various orders were not appealable. However, he neither cites to any portion of the record identifying the

---

required a timely fair hearing. The support order is reversible error because it resulted from the custody schedule caused by that denial." He also asserts that "[i]f the Court of Appeal[] were to affirm this order, it would establish public policy that the State may violate a fit, law-abiding parent's fundamental constitutional rights in order to make him a source of child support revenue to the State. That is known as tyranny."

particular orders he asserts are not appealable nor provides citation to legal authority with respect to their appealability. Having failed to support his argument with citation to the record or to legal authority, it is waived. (*Del Real v. City of Riverside, supra,* 95 Cal.App.4th at p. 768; *Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 109 [115 Cal.Rptr.2d 285]; *Akins v. State of California* (1998) 61 Cal.App.4th 1, 17, fn. 9 [71 Cal.Rptr.2d 314].)

 We recognize the fact that the father is appearing without the benefit of legal counsel. However, we are unable to ignore rules of procedure just because we are aware of that fact. "When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]. Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney [citation]." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638–639, fn. omitted [178 Cal.Rptr. 167]; see also *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284–1285 [111 Cal.Rptr.2d 439].)

B. *Order Taking Rental Payments into Consideration for Child Support Calculation:*

(1) *Unfair surprise*

At the outset, we address the father's argument that he was unfairly taken by surprise when, in December 2003, the judge raised the issue of whether the $600 payments should be construed as income to the father—an issue the father says was not pending. We disagree with the father's characterization of events. In her July 11, 2003 findings and recommendation, the commissioner specifically addressed the significance of the rental situation, and in particular, whether the roommate's payments constituted income to the father. She stated therein: "Court finds that Father shares his home with another party who pays rent and will not include that as a part of Father's income." Instead, the commissioner recommended that the amount of rent the father deducted as a business expense should be the amount that was taken into consideration in determining income.

However, it appears the findings and recommendation of the commissioner were not adopted. They never became the final order of the court. Therefore, the issue of the effect of the rental arrangement on the father's income remained undecided in December 2003. The matter needed to be resolved and we are unpersuaded by the father's argument that his rights were violated when the judge addressed it.

Similarly, the father asserts that he was unfairly taken by surprise when the court applied the "special circumstances" rule of Family Code section 4057, subdivision (b)(5) against him. The father contends "[t]he issue of applying

special circumstances against [him] was not raised until [his] motion for [a] new trial. And then it was raised by the Court . . . . Therefore, application of the special circumstances exception against ˙[him] was not at issue in this case." (Fn. omitted.)

Again, we disagree with the father's characterization of events. In his offer of proof filed December 29, 2003, the father himself specifically raised the application of Family Code section 4057, subdivision (b)(5). He did so before the April 15, 2004 order was entered and before the new trial motion was filed. Even though the father did not raise section 4057, subdivision (b)(5) for the purpose of arguing against himself, he nonetheless put the application of the special circumstances rule in issue. That being the case, we cannot countenance his claim of surprise.

■ Furthermore, the father cites no authority for the proposition that a trial court cannot amend its statement of decision after a new trial motion has been brought. It is the appellant's obligation to cite legal authority to demonstrate error. (*McComber v. Wells, supra,* 72 Cal.App.4th at pp. 522–523.) He did not do so. Having addressed the father's procedural arguments, we turn to the substantive issues involved.

(2) *General principles*

■ In reviewing the child support order, we bear certain principles in mind. "First, child support awards are reviewed for abuse of discretion. [Citations.] We observe, however, that the trial court has 'a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . .' [Citation.] Furthermore, 'in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]' [Citation.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282–283 [111 Cal.Rptr.2d 755].)

■ "California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. (See Fam. Code, §§ 4050–4076.) 'The guideline seeks to place the interests of children as the state's top priority.' [Citation.] In setting guideline support, the courts are required to adhere to certain principles, including these: 'A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.' [Citation.] 'Each parent should pay for the support of the children according to his or her ability.' [Citation.]" (*In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 283, fn. omitted.)

"To implement these policies, courts are required to calculate child support in accordance with the mathematical formula set forth in the statute. (See § 4055; [citations].) . . . [A]dherence to the guidelines is mandatory, and the trial court may not depart from them except in the special circumstances enumerated in the statutes. [Citations.]" (*In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 284, fn. omitted.)

■ In order to apply the guidelines, one must ascertain the income of the parents. "A parent's gross income, as stated under penalty of perjury on recent tax returns, should be presumptively correct. [Citation.] Returns are, after all, ultimately enforced by federal and state criminal penalties. Hence it is not surprising that tax returns are the core component of determinations under the guideline formula." (*In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 332 [112 Cal.Rptr.2d 893].)

(3) *$600 payments as sublease income*

The father relies upon *In re Marriage of Loh, supra,* 93 Cal.App.4th 325, and implies that, in applying the guideline formula in this matter, the court is required to use the income as stated on his tax returns, which do not reflect his roommate's rental payments as income to him. In other words, he would like to convince us that the court is precluded from considering whether the $600 monthly payments constitute income because he did not mention the payments on his tax returns.

■ However, the father overlooks the language from *In re Marriage of Loh, supra,* 93 Cal.App.4th at page 332, to the effect that the statements of income as shown on tax returns are only "presumptively correct." *In re Marriage of Loh* does not state that the presumption is irrebuttable. To the contrary, while the case emphasizes the fact that tax returns provide the information on which courts ordinarily should rely, it also concedes that, in a given case, evidence may be admitted to demonstrate that the information contained in the tax returns is in fact incorrect. The *In re Marriage of Loh* court stated: "[W]e are not saying that a parent may never prove income that was either nonreported or underreported on the other parent's tax returns by means of . . . evidence . . . . [Citation.] If the IRS can do it, a parent should be able to do it. But we are saying that to do so will take a more detailed showing than was made here." (*Id.* at pp. 337–338.)

In *In re Marriage of Loh, supra,* 93 Cal.App.4th 325, the mother tried to prove that the father had understated his income, but her evidence consisted of photographs of the father next to certain cars or at his girlfriend's expensive home, outdated tax returns, and inaccurate Internet information. (*Id.* at pp. 328–329.) The evidence simply failed to demonstrate that the

father had understated his current income. (*Id.* at p. 336.) In the case before us, however, evidence has been admitted to show that the father collects $600 per month in rent from his roommate, even though the money is not reflected on his tax returns. *In re Marriage of Loh, supra,* 93 Cal.App.4th 325, does not preclude the consideration of whether that evidence shows possible unreported income.

■ *In re Marriage of Loh, supra,* 93 Cal.App.4th 325, is not the only case to stress the importance of tax returns and income tax laws in the determination of guideline support. Other cases also have acknowledged the significance of income tax laws in the child support arena. The court in *In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646, 650 [103 Cal.Rptr.2d 529], stated: "Although federal law is not conclusive on the interpretation of [Family Code] section 4058, it is persuasive, because '[t]he operative language in subdivision (a) [of section 4058], i.e., "annual gross income . . . means income from whatever source derived," was lifted straight from the definition of income in section 61 of the Internal Revenue Code.' [Citation.]"

So, the question is whether "income from whatever source derived" includes rental payments. According to Family Code section 4058, subdivision (a)(1), the answer to that question is "yes."

■ Family Code section 4058 provides in pertinent part: "(a) The annual gross income of each parent means income from whatever source derived, . . . and includes, but is not limited to, the following: [¶] (1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article." As we can see, the statutory definition of "income" for the purposes of calculating guideline child support specifically includes "rents." (*Ibid.*)

This notwithstanding, the father says that the $600 his roommate pays constitutes neither rent nor income. He again points to *In re Marriage of Loh, supra,* 93 Cal.App.4th at pages 333–336, wherein this court disagreed with cases that characterized a reduction in living expenses, such as the provision of free housing to a parent, as income to that parent. Thus, the father argues that the reduction in living expenses brought about by the sharing of rent cannot be construed as income.

However, the trial court in the matter before us found that the father had sublet space to his roommate and had collected $600 a month in rent with respect to that sublease. Neither *In re Marriage of Loh, supra,* 93

Cal.App.4th 325, nor the cases discussed therein, addressed whether sublease rental payments constitute income to the sublessor. (*Id.* at pp. 334–335.) Inasmuch as Family Code section 4058, subdivision (a)(1) states that rent constitutes income, the trial court's holding is proper, so long as the housing arrangement with the roommate is properly characterized as a sublease and the roommate's payments are properly characterized as sublease rental payments owing to the father.

In his motion for a new trial, the father questioned whether there was any evidence in the record to show that the arrangement was a sublease and stated that he simply characterized it as a "shared rental." He makes a similar argument on appeal, stating "[t]here was no evidence of a lease . . . ." We disagree.

■ The father testified that he rented the home before his separation from the mother. Thus, the father was an initial tenant. He represented to the court that he took in a roommate in 2001, a few months after his separation from the mother. In addition, the father stated that he collected the money from the roommate and paid it over to the landlord. This implies that the roommate was obligated to make payment to the father, not to the owner of the property. This testimony constitutes substantial evidence in support of the court's finding that the arrangement constituted a sublease between the father and the roommate rather than a direct lease or rental relationship between the landlord and the roommate. (See *Vallely Investments v. BancAmerica Commercial Corp.* (2001) 88 Cal.App.4th 816, 823 [106 Cal.Rptr.2d 689] [sublease created when tenant transfers only a portion of tenant's estate; no privity of estate or contract between sublessee and landlord]; *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 360, fn. 5 [6 Cal.Rptr.2d 467, 826 P.2d 710] [when a tenant sublets space, he converts space to cash].)

■ "[U]nder the familiar tenets of the substantial evidence rule, ' "In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in [order] to uphold the [finding] if possible." ' [Citation.]" (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31 [99 Cal.Rptr.2d 252, 5 P.3d 815].) We uphold the finding that the roommate owed sublease rental payments to the father. Therefore, based on Family Code section 4058, subdivision (a)(1), we also uphold the characterization of those payments as "income."

(4) *Special circumstances for departure from guideline formula*

■ *In re Marriage of Loh, supra,* 93 Cal.App.4th 325, indicated that there was more than one permissible way to deviate from complete reliance on the income reported on tax returns. One method, as we have discussed, is

the admission of evidence to show that the reported income is inaccurate. Another is to show that there are special circumstances that warrant departure from the guideline amount, as permitted by Family Code section 4057. In fact, the court in *In re Marriage of Loh, supra,* 93 Cal.App.4th 325 indicated that reliance on Family Code section 4057 is the correct method when dealing with nontaxable benefits. (93 Cal.App.4th at pp. 333–336.)

The court stated: "If, for example, in [certain cited cases], the housing situation of one parent might have meant that application of the formula amount would have been inappropriate or unjust . . . , the proper course was to first calculate the guideline amount in light of the parents' incomes as revealed by such evidence as tax returns, income and expense declarations and pay stubs, and then, under [Family Code] section 4057, to adjust the amount upward in light of the free housing benefit. Such an approach respects the rebuttable correctness of the mechanically calculated guideline amount, and allows child support awards to properly reflect the parents' standard of living without doing violence to the word 'income' . . . ." (*In re Marriage of Loh, supra,* 93 Cal.App.4th at pp. 335–336, fn. omitted.)

In the matter before us, the trial court did consider this method of adjustment. As mentioned previously, when the father moved for a new trial, the judge amended his statement of decision to state that there were two alternative reasons for his consideration of the roommate's $600 payments in determining the amount of child support the father should pay. The first reason was that the $600 was considered to be sublease income to the father. The second reason was that, if the $600 was not construed as income to the father, there were nonetheless special circumstances which compelled a departure from the guideline formula, per Family Code section 4057, subdivision (b)(5).

Family Code section 4057 provides in pertinent part: "(a) The amount of child support established by the formula provided in subdivision (a) of Section 4055 is presumed to be the correct amount of child support to be ordered. [¶] (b) The presumption of subdivision (a) is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053, because one or more of the following factors is found to be applicable by a preponderance of the evidence . . . : [¶] . . . [¶] (5) Application of the formula would be unjust or inappropriate due to special circumstances in the particular case. These special circumstances include, but are not limited to, the following: [¶] . . . [¶] (B) Cases in which both parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent. . . ."

Here, the court carefully articulated its rationale. It stated that neither parent made much money and that there was "an extraordinarily low amount of money available for [the child's] support." (Capitalization omitted.) The court appropriately took into consideration the amounts of money the two parents had available for housing and determined that it would be unjust to ignore the effect of the roommate's $600 monthly rental payment on the ability of the father to provide for the child. We cannot say that the court abused its discretion in so concluding. (See *In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 282 [abuse of discretion standard applies].)

### (5) *Conclusion*

■ We will uphold the decision of the trial court if it is correct on any ground. (*Schubert v. Reynolds, supra,* 95 Cal.App.4th at p. 110.) In this case, the decision of the trial court is correct on either ground, whether by construing the roommate's $600 payments as sublease income to the father or by construing that cash flow as a special circumstance that justifies the deviation from the guideline formula when there is so little money available for the proper housing and support of the child.

### C. *Request for Judicial Notice:*

On December 22, 2004, the father filed a request for judicial notice. He asked therein that this court take judicial notice of two law review articles published by out-of-state universities. In support of his request, the father stated that he "hoped . . . that the importance of the fundamental issues raised in this case to the life, liberty, and pursuit of happiness of millions of traumatized families will make these articles worthy of review." We decline to grant the father's request, for a couple of reasons.

■ First, as stated in Evidence Code section 450, "Judicial notice may not be taken of any matter unless authorized or required by law." The father has provided no citation to any authority that would permit this court to take judicial notice of the law review articles. Moreover, Evidence Code section 451 enumerates the matters of which a court must take judicial notice and Evidence Code section 452 enumerates the matters of which a court may take judicial notice. Law review articles are not listed in either of those statutory provisions. Therefore, Evidence Code section 450 bars the taking of judicial notice.

■ Second, a "court will not normally take judicial notice of matters which were not brought to the attention of the trial court . . . . [Citation.]" (*Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1083, fn. 3 [1 Cal.Rptr.2d 215].) There is no indication that the law review articles were presented to the trial court, so the taking of judicial notice would be inappropriate for this reason as well.

## III

## DISPOSITION

The order is affirmed. The request for judicial notice is denied. The County shall recover its costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied October 26, 2005, and on September 28, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 21, 2005.