Filed 5/17/21  Marriage of N.O. and J.O. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of N.O. and J.O. | D077176 |
| N.S., | |
| Respondent, | |
| v. | (Super. Ct. No. ED92434) |
| J.O., | |
| Appellant; | |
| COUNTY OF SAN DIEGO, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Ernest M. Gross, Commissioner.  Affirmed.

J.O., in pro. per., for Appellant.

No appearances for Respondents.

J.O. (Husband) appeals the trial court's postjudgment order denying his request for order (RFO) regarding a variety of support-related issues involving N.S. (Wife) and their two children.  For reasons we will explain, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Husband and Wife once lived in Texas. In 2013, Wife moved to San Diego to attend law school. The children moved to be with her at some point.

In January 2014, Wife filed a petition for dissolution. It appears she obtained a default judgment in May 2014. The court ordered Husband to pay child and spousal support. In early 2015, the San Diego County Department of Child Support Services (the County) became involved in the case.[1]

In August 2019, Husband filed an RFO seeking modification of a variety of support-related issues.[2] As relevant here, Husband requested (1) a $3,183.80 credit toward support arrears for school lunches he paid for while the children were with Wife; (2) a $5,923 credit toward support arrears for Wife's "debt, dental emergency, and financial crises" that Husband claims to have paid for; (3) a $4,600 credit toward support arrears arising from Wife claiming the children as dependents on her 2016 tax return; (4) imputation of income to Wife for support-calculation purposes; and (5) an increase of Husband's parenting timeshare from 32 percent to 49 percent.

---

[1] Neither Wife nor the County have appeared in this appeal.

[2] Husband did not include his RFO papers (or Wife's or the County's responding papers) in his notice designating the record on appeal. We have gleaned their contents from the trial court's minute orders and the reporter's transcript of the RFO hearing.

Husband *did* designate numerous exhibits in his notice designating the record on appeal. However, those exhibits were admitted at prior hearings, and thus were not initially included in the clerk's transcript. On our own motion, we augment the record to include those exhibits. (See Cal. Rules of Court, rule 8.155(a)(1)(A) ["At any time, on . . . its own motion, the reviewing court may order the record augmented to include [¶] . . . [¶] . . . [a]ny document filed or lodged in the case in superior court . . . ."]; further rule references are to the Cal. Rules of Court.)

Husband, Wife, and the County appeared at the December 13, 2019 hearing on Husband's RFO. They addressed Husband's issues as set forth below.

*School Lunches*

Husband testified that when the children began going to school, Wife provided them with lunches. However, there were multiple occasions when Wife either did not provide a lunch, or a school administrator deemed the lunch inadequate, and the school provided "emergency lunches." Husband asserted that he paid for these lunches, and that Wife agreed to credit those amounts toward his $30,000 child support arrears. Husband acknowledged, however, that this agreement was not memorialized in writing. Husband supported this claim with an exhibit purporting to be a printout of a school lunch account showing that numerous school lunch orders for the children were "placed by Admin." Only one lunch order (for $6.20 on September 27, 2016) stated that it was an "[e]mergency lunch."

Wife testified "there was never an agreement" regarding lunches. She explained that their son's friends "at the time were getting school lunches" and "had something that they call a 'hot lunch crew.'" When the son asked Wife if he could buy hot lunches, Wife told him he could do so only on special occasions. The son then asked Husband, who opened a lunch account with the school and paid for lunches with his credit card. Wife denied any of the school lunches were provided because she failed to provide a suitable lunch.

The trial court denied Husband's request, finding that "[b]ased on the evidence he presented," Husband did "not me[e]t his burden of proof by a preponderance of the evidence."

3

*Wife's Debts and Dental Work*

The $5,923 credit Husband sought for payments he made toward Wife's "debt, dental emergency, and financial crises" appears to consist of $689 for dental work,[3] $2,600 for car and rent payments, and $2,137 for electronic money transfers for debts.[4] It appears Wife confirmed in a text message that she owed Husband $3,400 for some of these expenses.

Husband testified he was entitled to a $689 credit for an emergency root canal for Wife that he paid for. He supported this claim with a statement from his flexible spending account from 2016.

Wife acknowledged Husband paid for the procedure, but she maintained he was not entitled to a credit because the procedure occurred in 2013, while they were still married and before the court had imposed any support obligations. Wife pointed out that a text message exchange included in Husband's exhibits confirmed that her dental work occurred in 2013. Wife surmised the account statement from 2016 related to Husband's own expenses because he "had a lot of dental work himself."

The trial court denied Husband's request for a credit for the dental work, finding he did not "mak[e] his burden of proof."

Regarding the $2,600 for car and rent payments, the trial court observed that a different bench officer had already credited that sum to Husband at an earlier hearing.

---

[3] Some references in the appellate record indicate Husband sought $686 for the dental work.

[4] These categories total $5,426—about $497 less than Husband sought. This difference may be accounted for by a $490 loan Wife testified she made to Husband.

4

As for the electronic transfers, Husband testified he was entitled to a $2,137 credit for funds he sent Wife "every time she needed any money for whatever reason." He asserted Wife "stated . . . in text messages that she would give [him] credit towards [his] arrears." Husband supported this claim with bank statements indicating numerous transfers to Wife through the "Zelle" banking application, and a printout of transfers to Wife through the "Venmo" application.

Wife countered that some of the electronic transfers were Husband repaying a $490 loan she had made to him.[5] Others were for indulgences for the children. Wife maintained Husband was entitled, at most, to a $300 credit for the transfers.

The trial court found Husband met his burden as to $800—the $3,400 Wife acknowledged in a text message, minus the $2,600 that the court had previously credited to Husband's arrears for car and rent payments.

### $4,600 Credit for Tax Exemption

Husband testified he was entitled to a $4,600 credit because his support obligations were calculated as if he had received a $4,600 tax exemption for filing his 2016 tax return as head of household and claiming the children as dependents, when in fact Wife claimed the children as dependents on her 2016 tax return and thus received the $4,600 exemption. Although the court had ordered this type of treatment regarding the 2017 tax year, Husband acknowledged there was no such order for 2016.

The trial court found that Wife properly claimed the children as dependents because they spent the majority of time with her, and that

---

5    Husband's bank statements show that he made four Zelle transfers to Wife totaling $490.

5

Husband's guideline support for 2016 had therefore been miscalculated because it was based on the erroneous assumption he received the $4,600 tax exemption. The court awarded Husband a $1,653 credit against his spousal support arrears based on recalculating his 2016 guideline support obligations using corrected treatment of the $4,600 exemption.

*Imputing Income to Wife*

Husband testified income should be imputed to Wife because although his support obligations were based on her reported income of $20 per hour, he believed she had the potential to earn "way more." Husband based this belief on the fact Wife had since graduated from law school (but had not yet passed the bar exam), "she's owned a mortgage company, she's been a banker, [and] she's been an educator."

Wife explained she had not yet taken the bar exam in part due to "the very severe financial difficulties" Husband had caused her, and because she "was ill." She had been unemployed "for the most part of 2019"; the children's school schedule limited the number of hours she could work; she had limited experience in the legal field; and the mortgage company Husband referenced "never even made $60,000 per year."

The trial court denied Husband's request and calculated support based on Wife's actual income.

*Parenting Timeshare*

Husband testified that although his parenting timeshare had last been assessed at 32 percent, his actual visitation time the previous year reflected a timeshare of about 49 percent. He further asserted Wife refused certain visitations to prevent his timeshare from increasing—and her support benefits from decreasing.

6

Wife acknowledged the children had spent more time with Husband the prior year, but explained it was an "exceptional situation" because she had been "ill earlier in the year with anemia," which she initially thought was cancer. She asked Husband for money, but he instead offered to take the children for the summer. Wife explained that she and Husband "had a discussion about it in terms of the legal ramifications" because she "was very hesitant" of Husband's "litigious[ness]." Wife confirmed that "[s]ince that exceptional situation, things have gone back to the way they were."

Wife also disputed Husband's claim that she denied him visitations. She explained that every time a visitation issue arose, Husband filed "motions . . . and ex partes. They have all been denied."

The trial court maintained Husband's parenting timeshare at 32 percent.

## DISCUSSION

### I. Appellate Principles

"It is a fundamental rule of appellate review that a judgment is presumed correct and the appealing party must affirmatively show error." (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) Even when, as here, no respondent's brief is filed, the appellant still bears the burden of showing prejudicial error. (See *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192, fn. 7; rule 8.220(a)(2).)

To overcome the presumption of correctness, "the appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order." (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443 (*Smith*); rule

8.204(a)(1)(B) [appellant's brief must "support each point by argument"].) "When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

The appellant must also provide an appellate record sufficient to establish error as to each challenged order. (*Jameson*, *supra*, 5 Cal.5th at p. 609.) " ' "[I]f the record is inadequate for meaningful review, . . . the decision of the trial court should be affirmed." ' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) The appellant's brief must also "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Rule 8.204(a)(1)(C).) An appellant who fails to provide proper citations to the record to support appellate claims may be deemed to have forfeited those claims. (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1251, fn. 11 (*Collins & Flowers*); *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589 (*Alki Partners*) ["An appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference."].)

An appeal is not a second trial. We do not reweigh evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 (*Curcio*).) We "resolve all factual conflicts and questions of credibility" in the prevailing party's favor. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 (*Schild*).) And we will affirm the judgment if it is correct on any theory, regardless of the trial court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

These appellate principles apply with equal force to self-represented appellants. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)

## II.  Husband Has Not Shown Reversible Error

Husband has forfeited his appellate challenges because he has not complied with his obligations as appellant.  He did not include a single citation to the appellate record in his appellate brief.  (Rule 8.204(a)(1)(C); *Collins & Flowers*, *supra*, 205 Cal.App.4th at p. 1251, fn. 11; *Alki Partners*, *supra*, 4 Cal.App.5th at p. 589.)  Nor did he cite a single legal authority in support of any his claimed legal errors.  (Rule 8.204(a)(1)(B); *Smith*, *supra*, 132 Cal.App.4th at p. 1443; *Delta Stewardship Council Cases*, *supra*, 48 Cal.App.5th at p. 1075.)  Thus, the challenges are forfeited.

Even if Husband had not forfeited his appellate challenges, he has not met his burden as appellant to show reversible error.

Regarding the children's school lunches, Husband and Wife offered differing explanations for the situation.  And although the school lunch account statement appears to show that school administrators placed orders for the children on several occasions, it does not explain the circumstances that led to those orders.  The trial court found Husband did not meet his burden.  We do not second-guess the trial court's credibility determinations or reweigh the evidence.  (See *Curcio*, *supra*, 47 Cal.App.5th at p. 12; *Schild*, *supra*, 232 Cal.App.3d at p. 762.)

Similarly, Husband and Wife offered differing explanations for the $5,923 credit Husband sought for dental work and other debts.  The trial court was entitled to credit Wife's explanation regarding the timing of the dental work, and the fact that some of the electronic money transfers were Husband's repayment of debts and indulgences for the children.  (See *Curcio*, *supra*, 47 Cal.App.5th at p. 12; *Schild*, *supra*, 232 Cal.App.3d at p. 762.)  To the extent Wife acknowledged in a text message that Husband was entitled to a $3,400 credit, the court found that $2,600 had already been credited to

9

Husband, and thus he was entitled to only an additional $800 credit. Husband has not shown this conclusion was erroneous.

As for the trial court's treatment of the $4,600 tax exemption, Husband has not cited any authority to show the trial court erred by finding Wife was entitled to claim the children as dependents on her 2016 tax return. Nor has Husband shown any error in the recalculation of his support obligations once the court corrected the assumptions regarding the tax exemptions.

Regarding Husband's claim that the trial court should have imputed income to Wife, the parties once again presented differing accounts of Wife's earning capacity. We do not disturb the trial court's factual determinations on this issue, particularly inasmuch as the claim relates to Wife's earning capacity in the legal market over which the court presides. (See *Curcio*, *supra*, 47 Cal.App.5th at p. 12; *Schild*, *supra*, 232 Cal.App.3d at p. 762.)

Finally, regarding the parenting timeshare, the trial court apparently accepted Wife's explanation that Husband's increased visitation during the preceding year was due to an "exceptional situation," and "things have [since] gone back to the way they were." The trial court was entitled to accept this explanation (see *Curcio*, *supra*, 47 Cal.App.5th at p. 12; *Schild*, *supra*, 232 Cal.App.3d at p. 762), and Husband has cited no authority indicating it was improper for the court to accommodate an "exceptional situation" (see rule 8.204(a)(1)(C); *Collins & Flowers*, *supra*, 205 Cal.App.4th at p. 1251, fn. 11; *Alki Partners*, *supra*, 4 Cal.App.5th at p. 589).

## DISPOSITION

The order is affirmed.  Appellant to pay respondents' costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

11