Filed 7/13/23  Silas v. Wegman CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARTINA A. SILAS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BARRY R. WEGMAN,<br><br>    Defendant and Appellant. | B321219<br><br>(Los Angeles County Super. Ct. No. 21STCV28185) |

APPEAL from an order of the Superior Court of Los Angeles County, Maurice Leiter, Judge.  Affirmed.

Debra J. Wegman for Defendant and Appellant.

Martina A. Silas, in pro. per.; June E. Poyourow for Plaintiff and Respondent.

# INTRODUCTION

Attorney Martina A. Silas filed this action against attorney Barry R. Wegman and other attorneys to recover money Silas alleges a third party, attorney James Ellis Arden, wrongfully transferred to them instead of her. Wegman filed a special motion to strike the complaint under Code of Civil Procedure section 425.16 (section 425.16), arguing Silas's claims against him arose from activity protected under the statute because the money he received from Arden was payment for legal services Wegman provided in connection with litigation in Arden's bankruptcy case. Rejecting that argument, the trial court denied Wegman's motion, and he appealed. We, too, reject that argument, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Silas Files This Action*

The parties involved in this dispute have been litigating through the state and federal courts for decades. In January 2008 Silas filed a malicious prosecution action against Arden in state court, based on an underlying legal malpractice action Arden litigated against Silas beginning in 2003. In June 2011 Silas prevailed in her malicious prosecution action after a jury trial and obtained a judgment against Arden for $300,756, plus costs and interest.[1] In December 2011 the trial court in that case

---

[1] As the Court of Appeal explained in affirming that judgment: "Silas represented [a client] in a personal injury action resulting in a jury award that was later overturned on the

2

assigned to Silas various of Arden's rights to payment, including the right to payment for services from any of Arden's clients and the right to collect money from any third party. The order also restrained Arden from encumbering, assigning, spending, or disposing of any assets subject to the order.

Silas had difficulty collecting on her judgment against Arden. According to Silas, Arden "'repeatedly thwarted [her] efforts to enforce the assignment order and collect on the judgment.'" Consequently, Silas looked to third parties.

In July 2021 Silas filed this action against Wegman and two defendants, Fox Law Corporation, Inc. and attorney Steven Robert Fox (collectively, Fox), who are not parties to this appeal. The operative, first amended complaint asserted causes of action against the defendants for fraudulent transfer, fraud and concealment, conversion, money had and received, and an accounting.[2] Silas sought to recover at least $87,252 from Fox

grounds that workers' compensation was the exclusive remedy. [The client] filed a malpractice action against Silas, asserting she failed to assert a meritorious defense to workers' compensation exclusivity, and [the client] was represented by Arden in that action." (*Silas v. Arden* (2012) 213 Cal.App.4th 75, 79; see *Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 714 [affirming the order granting judgment notwithstanding the verdict because "the exclusive remedy provision of the Workers' Compensation Act barred" the action by Silas's client].) Silas filed the personal injury action in 1995. (*Silas*, at p. 79.)

[2] An accounting is not an independent cause of action, but a type of remedy that depends on the validity of underlying claims. (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, disapproved on another ground in *McWilliams v. City of*

3

and $11,440 from Wegman, claiming Arden wrongfully transferred those sums to them instead of her. Silas alleges Fox and Wegman "conspired with Arden, and with each other, to fraudulently transfer, convert, and deprive Silas of funds" the defendants knew Silas was entitled to.

Silas alleged in her complaint in this action that in June 2013 Arden filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, which automatically stayed postjudgment collection proceedings in her state court action against him. (See 11 U.S.C. § 362(a)(2).) Silas alleged that Arden's bankruptcy petition indicated Fox represented him in the proceeding, that Arden had earned at least $109,990 subject to the December 2011 assignment and restraining orders, and that he had paid only $888.29 on his judgment debt to Silas. Silas alleged that she filed an adversary proceeding in the bankruptcy court to preclude discharge of Arden's judgment debt and that in April 2014 the court granted her motion for summary judgment in that proceeding. In July 2015, however, the Bankruptcy Appellate Panel for the Ninth Circuit (BAP) reversed. On remand, the bankruptcy court held a trial and, in December 2018, ruled Arden's judgment debt was not dischargeable. Arden appealed that ruling to the United States Court of Appeals for the Ninth Circuit, which affirmed.

Meanwhile, on determining in December 2018 Arden's debt based on Silas's judgment was not dischargeable, the bankruptcy court lifted the automatic stay of the collection proceedings in Silas's state court action. Thus freed from the bankruptcy stay, Silas in August 2019 subpoenaed bank records from Arden to

*Long Beach* (2013) 56 Cal.4th 613, 626; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 95.)

conduct a judgment debtor examination. From these she learned that "in 2018-2019" Arden issued checks to Wegman totaling at least $11,440. Silas filed a motion in the collection proceedings in her state court action "to set aside" these payments to Wegman on the ground they were "fraudulent transfers." Wegman filed an opposition, arguing, among other things, Silas "was required to file a separate action to recover the funds." Wegman also submitted a declaration in which he stated the payments at issue were for legal work he performed in Arden's bankruptcy case, specifically, on the appeal to the BAP from the bankruptcy court's order granting Silas's motion for summary judgment in the adversary proceeding. In January 2020, without reaching the merits of Silas's claim the payments were fraudulent transfers, the trial court denied Silas's motion without prejudice to her right to seek relief by a separate action.

Still trying after 10 years to collect $11,000 of her $300,000 (plus, plus) judgment against Arden, Silas filed this action ("without necessarily agreeing that a separate action is required"). She alleged Wegman's statement (in his declaration in opposition to her motion to set aside fraudulent transfers) that he worked on Arden's appeal to the BAP in the adversary proceeding was false. According to Silas, that appeal "was fully concluded by July of 2015," and both Wegman and Arden had stated in declarations "they did not meet until December 2018." Moreover, Silas averred,[3] Wegman never appeared as an attorney

---

[3]     "To aver means 'to assert or affirm confidently,' or 'to declare in a positive or even peremptory way.' To allege is 'to assert without proof,' hence, less confidently. (Block, *Language Tips* (1998) 70 N.Y.St. B.J. 58; see Garner, Dictionary of Modern

of record in Arden's bankruptcy proceeding, nor did he ever disclose receiving compensation from Arden in that matter, as the Bankruptcy Code requires of an attorney representing a debtor. (See 11 U.S.C. § 329(a).) Silas alleged "Wegman did not actually perform any work for Arden" in the bankruptcy proceeding. So, she said, the money Arden paid Wegman was a fraudulent transfer of money Arden owed her.

B.   *Wegman Files a Special Motion To Strike, Which the Trial Court Denies*

In February 2022 Wegman filed a special motion to strike Silas's complaint. He argued Silas's claims arose from protected activity under section 425.16 because the allegedly fraudulent transfers from Arden to him were payments for work he performed on Arden's appeal to the Ninth Circuit from the bankruptcy court's December 2018 ruling in Silas's adversary proceeding (not, as he allegedly stated previously, Arden's earlier appeal to the BAP). Wegman maintained Arden paid him a total of $11,440 to "research issues and make recommendations" relating to that appeal and "to draft an appellate brief for Mr. Fox's signature, who was still counsel of record" in Arden's bankruptcy case. Wegman supported these assertions with a declaration, copies of a retainer agreement between him and Arden (dated December 24, 2018 and describing the work to be done on Arden's appeal to the Ninth Circuit), invoices from Wegman to Arden totaling $11,440, canceled checks from Arden

Legal Usage (2d ed. 1995) p. 93 ["aver" refers to an "affirmation[ ] of fact, usually with no implication that an oath has been taken"].)

6

to Wegman for the amounts invoiced, and a copy of the appellate brief Wegman claimed he drafted "behind the scenes."

The trial court denied Wegman's special motion to strike, ruling Silas's claims did not arise from protected activity. The court acknowledged that "participation in legal proceedings is protected activity," but concluded that "the gravamen of" Silas's claims "is not that Wegman provided legal services for Arden." Instead, the court determined, the "transfer of funds allegedly owned by [Silas] gives rise to the claim liability." Wegman timely appealed.

## DISCUSSION

A.     *Applicable Law and Standard of Review*

Section 425.16, subdivision (b)(1), provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Section 425.16, subdivision (e), provides that an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official

proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  The Legislature has instructed that the statute "'be construed broadly.'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619 (*Rand*).)

Courts evaluate special motions to strike under section 425.16 "through a two-step process.  Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged.  [Citations.]  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*); accord, *Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871.)

We review de novo a trial court's order granting or denying a special motion to strike under section 425.16.  (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)  "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.  [Citations.]  In addition to the pleadings, we may

consider affidavits concerning the facts upon which liability is based." (*Park*, *supra*, 2 Cal.5th at p. 1067.)

    B.    *The Trial Court Did Not Err in Denying Wegman's Special Motion To Strike*

On the first step of the analysis, the defendant has the burden "to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)  Wegman argues "all Silas' claims against him" rest on "Arden's payment[s]" to him, which Wegman argues is protected activity because the payments were for litigation services he provided in Arden's bankruptcy.  In considering whether Arden's payments were protected activity, our focus is not Arden's conduct, but Wegman's, i.e., his *receipt* of the payments.  (See *Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1019 [the """requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e)"""].)  And Wegman has not shown his receiving the payments was protected activity.

As an initial matter, Wegman does not specify which of the four categories in section 425.16, subdivision (e), he contends applies here.  (See *Rand*, *supra*, 6 Cal.5th at p. 620 [to satisfy the first step of the analysis, defendant must demonstrate "the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e)'"].)  Instead, he appears generally to suppose the statute protects all litigation-related activity by an attorney.  The law does not support that supposition.

Section 425.16 does indeed protect *"qualifying acts* committed by attorneys in representing clients in litigation." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056, italics added (*Rusheen*); see *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113 [""all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected,"" italics omitted].) And courts applying the statute "have adopted 'a fairly expansive view of what constitutes litigation-related activities.'" (*Optional Capital*, at p. 113; see, e.g., *Trilogy Plumbing, Inc. v. Navigators Speciality Ins. Co.* (2020) 50 Cal.App.5th 920, 931 [communications during settlement negotiations ""are regarded as having been made in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2)""].) Still, "'[n]ot all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16.'" (*Trilogy Plumbing*, at p. 933; accord, *Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 257; see *Trilogy Plumbing*, at p. 924 ["While the alleged acts were generally connected to litigation, they did not include any written or oral statement or writing made in connection with an issue under consideration or review by a judicial body and therefore do not constitute protected activity under section 425.16."]; *Optional Capital*, at p. 114 [""conduct is not automatically protected merely because it is related to pending litigation . . . ,"" italics omitted]; see also *Rand, supra*, 6 Cal.5th at p. 620 ["the terms of subdivision (e)(2) make clear that 'it is insufficient to assert that the acts alleged were "in connection with" an official proceeding'"].)

Wegman therefore had to demonstrate his receiving payment from Arden for litigation services was an act falling within one of the four categories described by section 425.16, subdivision (e). Because Wegman makes no mention of any "public issue" or "issue of public interest" connected with his conduct, subdivision (e)(4) does not apply. (See § 425.16, subd. (e)(4) [protecting "any . . . conduct in furtherance of the exercise of the constitutional right of petition . . . in connection with a public issue or an issue of public interest"].) Activity protected by the remaining subdivisions is limited to making, in various circumstances, a "written or oral statement or writing." (§ 425.16, subd. (e)(1)-(3).) Wegman, however, has not cited any statement or writing by him as the basis for Silas's claims.[4]

Though it's unclear, Wegman appears to suggest receiving payment for litigation services is, by itself, a statement or writing that qualifies as protected activity under section 425.16, subdivision (e)(2). (See § 425.16, subd. (e)(2) [protecting "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"].) For example, he cites the Supreme Court's statement in *Rusheen*, *supra*, 37 Cal.4th 1048 that protected activity under section 425.16 includes "communicative conduct such as the filing, funding, and prosecution of a civil action." (*Rusheen*, at p. 1056.) But this statement does not help Wegman. For one thing, it does not identify "funding" in a disjunctive list of acts qualifying as statements or writings under the statute, but as one feature of a particular kind of conduct the Supreme Court was concerned

---

[4] Wegman denies arguing Silas's claims rest on his invoices to Arden.

11

with, namely, "communicative" conduct that might also qualify for protection under the litigation privilege codified in Civil Code section 47.[5]  (See *Rusheen*, at p. 1052.)  For another thing, Wegman did not "fund" anything; he *received* funds.  Even assuming funding litigation, by itself, is protected activity, that does not establish the converse, i.e., that receiving funding for litigation is also protected.

Wegman also cites *Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, disapproved in *Park, supra*, 2 Cal.5th at p. 1071, where the court, asserting that "'litigation funding decisions' . . . constitute protected petitioning activity," agreed with the appellants in that case that, "insofar as a cause of action is based on the payment of funds to maintain a lawsuit, this constitutes protected activity" under section 425.16.  (*Sheley*, at p. 1166.)  *Sheley*, however, does not aid Wegman.  First, Wegman does not contend Silas's claims rest on any decision or payment he made to fund Arden's litigation.  Second, again, even assuming the court in *Sheley* was correct that "payment of funds to maintain a lawsuit" is protected activity,[6] that does not establish that receiving such funds is also

---

[5]    In *Rusheen, supra*, 37 Cal.4th 1048 the Supreme Court considered the scope of the litigation privilege to determine whether it precluded the plaintiff from demonstrating a probability of prevailing on his abuse of process claim in step two of the section 425.16 analysis.  (*Rusheen*, at pp. 1052, 1055; see *id.* at p. 1058 ["a 'threshold issue in determining the applicability' of the [litigation] privilege is whether the defendant's conduct was communicative or noncommunicative"].)

[6]    We question whether *Sheley* is correct on this point.  The sole authority the court cited for its blanket assertion that "'litigation funding decisions'" are protected activity was

protected. And third, because the appellants in *Sheley* argued the conduct in question—"use of corporate assets to fund [a] lawsuit"—was protected under section 425.16, subdivision (e)(4) (*Sheley*, at p. 1160), the case can hardly be read to stand for the proposition that receiving payment for litigation services constitutes a protectable statement or writing under the remaining subdivisions of the statute.

Because Wegman did not carry his burden on step one, we do not consider whether Silas's claims lack minimal merit in connection with step two. Thus, we do not address Wegman's

---

*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257. In that discrimination case, the attorney-plaintiff claimed the defendants denied her case referrals because she was a woman. (*Id.* at p. 269.) The court concluded, for purposes of section 425.16, her claims were necessarily based on "defendants' attorney selection and litigation funding decisions themselves and, concomitantly, communications defendants made in connection with making those decisions." (*Tuszynska*, at p. 269.) But in *Park*, *supra*, 2 Cal.5th 1057, decided shortly after *Sheley*, the Supreme Court rejected the notion that, for purposes of section 425.16, "a claim arising from a decision inevitably arises from the communications leading to that decision." (*Park*, at p. 1071.) In doing so, the Supreme Court disapproved *Tuszynska* to the extent it presupposed courts deciding motions under section 425.16 "cannot separate an entity's decisions from the communications that give rise to them, or that they give rise to." (*Park*, at p. 1071; see *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 886 [rejecting the appellant's reliance on *Tuszynska* "for the proposition that litigation funding "'decisions'" are protected communications under section 425.16, subdivision (e)(2)," because "the *Park* court disapproved of *Tuszynska* to the extent it held the plaintiff's claims arose from communications rather than from the alleged discriminatory actions"].)

13

argument that Silas's supposed failure to comply with Civil Code section 1714.10 [setting forth procedural requirements for certain causes of action against an attorney that allege an attorney-client conspiracy] "warrants dismissal of her claims."[7]  (See *ibid*.)

[7]     It is not clear whether, in making this argument, Wegman also (or instead) seeks review of a separate, adverse ruling by the trial court relating to Civil Code section 1714.10.  If so, he has failed to satisfy the basic requirement of identifying such a ruling.  (See *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443 ["'[i]t is the appellant's burden to demonstrate the existence of reversible error,'" and "[a]s part of that burden, the appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order"]; see also see *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 ["'[i]t is axiomatic that we review the trial court's rulings and not its reasoning'"].)

## DISPOSITION

The order denying Wegman's special motion to strike is affirmed.  Silas's motion for sanctions is denied.  Silas is to recover her costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.